IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT,

    Plaintiff,

vs.                                                                          No. 18-cv-619 JCH/GBW

RAYMOND SMITH, *et al*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's *Pro Se* Tort Complaint, which was removed to Federal Court on June 29, 2018 (Doc. 1-1). Plaintiff contends prison officials exposed him to crystalline silica dust; provided inadequate medical care; and mishandled his administrative grievance. Plaintiff asks the Court to remand this proceeding to state court, while Defendant Ortega seeks a more definite statement describing Plaintiff's claims (Docs. 3, 7). Having reviewed the matter under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A, the Court will deny the motion to remand, dismiss the Complaint, and grant leave to amend.

## I. Background[1]

Plaintiff was previously incarcerated at the Lea County Correctional Facility (LCCF). (Doc. 1-1 at 2). In 2016, LCCF Warden Smith created a "Detail Cleaning Crew" to perform the "dirty work" other maintenance crews refused to do. *Id.* Smith created the Detail Cleaning Crew at the urging of LCCF Maintenance Manager Eddie Solomon. *Id.* at 3. Plaintiff alleges Solomon

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 1-1). For the limited purpose of this ruling, the Court assumes Plaintiff's allegations are true.

operated the maintenance department in a "clannish manner," giving preferential treatment and easier jobs to certain inmates. *Id.* For example, Solomon reserved the best materials - such as protective clothing, respirators, and safety pamphlets - for his favorite maintenance crew. *Id.* He also allegedly used prison labor and materials for personal projects. *Id.*

Plaintiff joined, or was assigned to, the Detail Cleaning Crew in August 2016. (Doc. 1-1 at 3). He scraped old paint off of doors and shower walls using gloves, safety goggles, and "inadequate dust masks." *Id.* The scraping produced crystalline silica dust, which migrated into the prison pods and ventilation system. *Id.* On more than one occasion, Solomon refused to open the ceiling vents. *Id.* When Plaintiff removed his dust mask at the end of the work day, he often noticed dust in his nose, mucus, and eyes. *Id.* He alleges Solomon, Warden Smith, Safety Manager Vazquez, Health Service Administrator Ortega, and Grievance Coordinator Valeriano "witnesse[d] this daily and did nothing to provide adequate protection, clothing[,] … equipment[,]" or "safety classes." *Id.*

In May 2017, Plaintiff experienced nosebleeds, shortness of breath, coughing fits, and fatigue. (Doc. 1-1 at 4-5). He visited the doctor, who accused Plaintiff of trying to file a class action lawsuit. *Id.* at 5. The doctor also stated that Plaintiff's lungs were clear, when a month earlier he advised Plaintiff: "Your chest is congested and you need to start exercising." *Id.* at 4. After filing an informal complaint, Solomon provided Plaintiff with a respirator and goggles. *Id.* at 4. Plaintiff alleges the filters in the respirator were dirty. *Id.* He further alleges Solomon knew there were some safety risks because he hid Plaintiff's work cart in the electrical room when GEO Corp. executives visited LCCF. *Id.* Solomon instructed Plaintiff to "lay low and take a few days off with pay" during the GEO visits. *Id.*

2

At some point, Plaintiff filed a formal grievance. (Doc. 1-1 at 5). Grievance Coordinator Valeriano allegedly failed to investigate, disregarded Plaintiff's statements, and denied relief. *Id.* Plaintiff appealed, but Prison Director German Franco affirmed the decision. *Id.* Plaintiff continued to scrape old paint from surfaces around LCCF between September 2017[2] and February 2018. *Id.* On one occasion, Solomon made him scrape paint from the showers and repaint the surfaces to "look good for [an] upcoming audit." *Id.* When Plaintiff visited the maintenance shop for supplies, he often discovered Solomon's favorite inmate crew "kicking back, playing cards, sleeping, and/or feeding feral rabbits." *Id.* Plaintiff complained, but Solomon banned him from the shop and directed him to recruit more inmates to help with the Detail Cleaning Crew. *Id.* In March 2018, Solomon disbanded the Detail Cleaning Crew because they were "making the maintenance department look bad." *Id.*

On May 17, 2018, Plaintiff filed the complaint in New Mexico's Fifth Judicial District Court, Case No. D-506-CV-2018-1047. (Doc. 1-1). The Complaint lists six LCCF Defendants:

(1) Warden Raymond Smith;

(2) Safety Manager Vazquez;

(3) Maintenance Supervisor Solomon;

(4) Health Service Administrator Ortega;

(5) Grievance Coordinator Valeriano; and

(6) Director of Adult Prisons German Franco.

(Doc. 1-1 at 2). Construed liberally, the Complaint raises claims for deliberate indifference to

---

[2] The Complaint actually cites a date range of "September 2018 through February 2018" (Doc. 1-1 at 5). Because Plaintiff filed the Complaint on May 17, 2018, the Court assumes that Plaintiff intended to cite the date range of September 2017 through February 2018.

health, safety, and medical needs and due process violations in connection with the grievance process. Plaintiff seeks at least $900,000 in damages under 42 U.S.C. § 1983 and/or the New Mexico Tort Claims Act (NMTCA). *Id.* at 1, 6. s

Defendant Ortega removed the Complaint to Federal Court on June 29, 2018. (Doc. 1). She also filed a motion for a more definite statement (Doc. 3). On August 9, 2018, Plaintiff filed a motion to remand (Doc. 7). The motion is fully briefed, and this matter is ready for initial review under 28 U.S.C. § 1915A.

## II. Remand

As an initial matter, Plaintiff asks the Court to remand the case to Fifth Judicial District Court. (Doc. 7). Because the motion was filed more than thirty days after the notice of removal, remand is only available if the Federal Court lacks subject matter over Plaintiff's claims. *See* 28 U.S.C. §§ 1446, 1447(c). Subject-matter jurisdiction exists where the face of the complaint raises a federal question. *See Karnes v. Boeing Co.,* 335 F.3d 1189, 1192 (10th Cir. 2003). The first page of Plaintiff's Complaint references his "42 U.S.C. § 1983 constitutional claims." Jurisdiction is therefore proper in this case. The fact that the state court could exercise jurisdiction over the federal claims, and that "state claims substantially predominate[] over the federal claims" does not - as Plaintiff contends - require a remand. The Motion to Remand (Doc. 7) will therefore be denied.

## III. Screening the Complaint Under Section 1915A

When a plaintiff is incarcerated, 28 U.S.C. § 1915A requires the Court to screen the complaint and dismiss any claims that "fail[] to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b). In other words, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

4

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellman,* 935 F.2d 1106, 1110 (10th Cir. 1991). While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court should overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless amendment would be futile. *Id.* at 1109.

The Complaint appears to raise constitutional claims under the Eighth Amendment and the Due Process Clause. (Doc. 1-1 at 2-5). Section 1983 of title 42 is the "remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1162 n. 9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

Applying these standards, the Court finds the Complaint fails to state a cognizable claim,

for several reasons. First, the facts are insufficient to demonstrate personal involvement by the supervisor-defendants (Warden Smith; Safety Manager Vazquez; Health Administrator Ortega; and Prison Director Franco). To "succeed on a § 1983 supervisory-liability claim," the plaintiff must show "the defendant 'promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that ... caused the complained of constitutional harm' and 'acted with the state of mind required to establish the alleged constitutional deprivation.'" *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). At most, the supervisor-defendants observed that Plaintiff was covered in dust most days and failed to intervene. (Doc. 1-1 at 3). There is no indication they implemented a policy that caused the silica exposure or that they even knew about the chemical. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Plaintiff's Eighth Amendment claims against Smith, Vazquez, Ortega, and Franco therefore fail.

The only allegation implicating Defendant Valeriano is that she mishandled the grievance process. The Tenth Circuit has repeatedly held "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 Fed. App'x 331, 332 (10th Cir. 2011) (collecting cases). *See also Von Hallcy v. Clements*, 519 Fed. App'x. 521, 524 (10th Cir. 2013) (rejecting prisoner's claim that prison director violated due process by providing him with an inadequate prisoner grievance reporting system); *Merryfield v. Jordan*, 431 Fed. App'x. 743, 749-50 (10th Cir. 2011) (same); *Ciempa v. Ward*, 150 Fed. App'x. 905, 906-07, 909 (10th Cir. 2005) (same). There is also no private right of action to challenge alleged violations of NMDOC's grievance procedures. *See Burnett v. Allbaugh,* 715 Fed. App'x 848 (10th Cir. 2017). Consequently, Plaintiff's claims against Valeriano fail as a matter of law.

6

With respect to Soloman, Plaintiff has not demonstrated that he was deliberately indifferent to health or safety. Prison officials can be liable under the Eighth Amendment for "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). "The 'substantial harm requirement' can be met by showing 'lifelong handicap, permanent loss, or considerable pain.'" *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (quotations omitted). The subjective component is met where "the official was subjectively aware of the risk,' . . . and the official 'recklessly disregard[ed] that risk.'" *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (quotations omitted).

The alleged facts here do not indicate that Plaintiff suffered permanent harm, or that he was "exposed to levels of silica dust … so unreasonably high as to violate contemporary standards of decency." *Davila-Bajana v. Holohan*, 2010 WL 2757104, at \*10 (W.D. Pa. June 17, 2010). It is also unclear whether Solomon knew the dust contained any dangerous chemicals. *See Ward v. Lamanna*, 334 Fed. Appx. 487 (3rd Cir. 2009) (exposure to crystalline silica does amount to deliberate indifference unless prison officials are aware of the harm). In fact, Plaintiff did not know at first. He alleges: "From August 2016 to present day [March 2018] … no safety classes nor any instructions on how to prevent exposure to crystalline silica" were provided, and "Plaintiff had no idea what crystalline silica was nor that it was a carcinogen until an inmate informed him." (Doc. 1-1 at 3). Further, even if Solomon "actually knew of a substantial risk to inmate health or safety" he can "be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844. Solomon initially gave Plaintiff a dust mask. After Plaintiff complained, Solomon provided a respirator and allowed Plaintiff to recruit additional inmates to help with the work. On these facts, the Court cannot find Solomon was

7

deliberately indifferent to health and safety.

Finally, Plaintiff appears to allege an unnamed physician was deliberately indifferent to his medical needs. Assuming Plaintiff can provide a name for that individual, the alleged facts do not demonstrate the physician ignored a serious risk of harm. The physician merely opined that his chest was clear after finding congestion a month earlier, and accused Plaintiff of trying to file a class action suit. A difference of opinion between a physician and a patient does not give rise to a § 1983 claim. *Perkins v. Kansas Dep't of Corr*., 165 F.3d 803, 811 (10th Cir. 1999). To the extent Plaintiff intends to raise claim for negligence under the NMTCA, it unclear what damage, if any, the physician caused, or even how any NMTCA claims are distinct from the alleged constitutional violations.

For these reasons, the Court concludes the Complaint fails to state a cognizable claim. The Court will: (1) grant Ortega's motion for a more definite statement, in part; (2) dismiss the Complaint under § 1915A, and (3) allow Plaintiff to file an amended complaint within thirty (30) days of entry of this Order. *See Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990) ("[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."). If Plaintiff declines to timely file an amended complaint or files an amended complaint that similarly fails to state a cognizable claim, the Court will dismiss the case without further notice. The parties are further advised that any amended complaint is subject to screening under 28 U.S.C. § 1915A. If the amended complaint survives initial review, the Court will order Defendants to file a responsive pleading.

**IT IS ORDERED** that Plaintiff's Motion for Remand (**Doc. 7**) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Ortega's Motion for a More Definite Statement (**Doc. 3**) is **GRANTED, IN PART**; Plaintiff's Civil Rights Complaint (**Doc. 1-1**) is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A; and Plaintiff may file an amended complaint within thirty (30) days of entry of this order.

                                              _____
                                              UNITED STATES DISTRICT JUDGE