# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT,

     Plaintiff,

v.                                                                   Civ. No. 18-619 JCH/GBW

RAYMOND SMITH, *et al.*,

     Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the undersigned, pursuant to Senior Judge Herrera's order of reference (*doc. 27*), on Defendant Mindy Lewis-Ortega's and the GEO Defendants'[1] Motions for Summary Judgment (*docs. 32, 36*), Plaintiff's motions to deny or stay the summary judgment motions until discovery is complete (*docs. 38, 46*), Defendant German Franco's Motion to Dismiss (*doc. 53*), the GEO Defendants' Motion to Strike Plaintiff's Motion in Opposition to Defendants [sic] Motion for Summary Judgment and Affidavit (*doc. 56*), Plaintiff's Motion for Leave to File Surreply to Defendant GEO [sic] and Defendant [Lewis-]Ortega's Motion[s] for Summary Judgment (*doc. 59*), Plaintiff's Motions for Sanctions (*doc. 60*), Jason Helmstetler's Motion for Joinder (*doc. 34*), and Plaintiff's Motion in Support to [sic] Motion for Joinder (*doc. 47*).

---

[1] The GEO Defendants are the GEO Group, Inc. ("GEO Group"), Raymond Smith, D. Vasquez, Eddie Solomon, and Moriama Valeriano.

Having reviewed the motions and their related briefing (*docs. 35, 37, 44, 48, 49, 51, 52, 57, 58, 61, 66, 68, 69, 70, 71, 74, 75, 76*)[2] and being full advised in the premises, I RECOMMEND that the Court do the following: (i) CONVERT Defendant Mindy Lewis-Ortega's and the GEO Defendants' Motions for Summary Judgment into motions to dismiss and DENY them; (ii) DENY as MOOT Plaintiff's motions to deny or stay the summary judgment motions pending discovery; (iii) GRANT Defendant Franco's Motion to Dismiss and DISMISS WITH PREJUDICE all Plaintiff's claims against him; (iv) DENY as MOOT the GEO Defendants' Motion to Strike and Plaintiff's Motion for Leave to File Surreply; (v) DENY Plaintiff's Motion for Sanctions; (vi) CONSTRUE Jason Helmstetler's Motion for Joinder as a motion to intervene and DENY it; and (vii) DENY Plaintiff's Motion in Support of Joinder.

I FURTHER RECOMMEND that the Court (i) VACATE IN PART its order (*doc. 26*), dated November 12, 2020, finding that all the claims in the Amended Complaint survive preliminary screening under 28 U.S.C. § 1915A; (ii) DISMISS WITH PREJUDICE all Plaintiff's claims against Defendants Lewis-Ortega, Valeriano, and GEO Group and Plaintiff's First Amendment claims against Defendants Vasquez and Solomon pursuant to 28 U.S.C. § 1915A for not stating a claim on further review; and (iii) ORDER

---

[2] I have not considered the surreply and supporting affidavit that Plaintiff twice filed in response to Defendant Mindy Lewis-Ortega's and the GEO Defendants' motions for summary judgment (*docs. 54, 55, 63, 64*) or his surreply to the GEO Defendants' Motion to Strike (*doc. 73*) since they were filed without leave of the court. *See* D.N.M.LR-Civ. 7.4(b) ("The filing of a surreply requires leave of the Court"). While Plaintiff is *pro se*, "he must comply with the same rules of procedure as other litigants." *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018).

Defendants Smith, Solomon, and Vasquez to file a *Martinez* report pursuant to *Martinez v. Aaron*, 570 F.2d 317, 320 (10th Cir. 1978) on Plaintiff's remaining Eighth Amendment and negligence claims against them.

## I.   BACKGROUND[3]

### A.  ALLEGED EXPOSURE TO CRYSTALLINE SILICA

From August 2016 through February 2018, Defendant Raymond Smith (the acting warden at Lea County Correctional Facility ("LCCF")) detailed Plaintiff to a cleaning crew and had him remove paint containing crystalline silica from the facility's doors in preparation for upcoming audits.  *See doc. 22* at ¶¶ 3, 12, 44, 65.  Defendant Eddie Solomon (the LCCF physical plant manager) oversaw the cleaning crew's day-to-day operations and provided it with scrapers and other tools to remove the paint.  *Id.* at ¶¶ 5, 13, 22.  Defendant D. Vasquez (the LCCF Fire Safety Manager) periodically assisted in this oversight.  *See id.* at ¶¶ 4, 30–31, 44.

When the cleaning crew was formed, Defendant Solomon had safety sheets about the paint, which stated that it contained crystalline silica, a mineral that poses health risks when inhaled.  *Id.* at ¶¶ 13–14.  He did not share this information with Plaintiff and the cleaning crew, train them on how to remove paint without inhaling this substance, or provide them with protective equipment.  *See id.* at ¶¶ 13–16.

---

[3] The statements in parts A and B are allegations, pulled from the Amended Complaint without comment as to their ultimate veracity.

As a member of the cleaning crew,[4] Plaintiff worked up to eight hours a day grinding and scraping paint off doors in LCCF housing units and facilities.  *Id.* at ¶ 23. The scraping and grinding covered him from head to toe in crystalline silica dust.  *Id.* at ¶ 29.  It also generated, and exposed other prisoners and LCCF staff to, clouds of this dust that lingered for hours and covered surfaces, including phones, window ledges, and tables where prisoners dined.  *Id.* at ¶¶ 23, 27–28.

Sometime in August 2016, Plaintiff requested Defendants Smith and Solomon to provide him and the cleaning crew with safety goggles and masks to protect them from the dust.  *See id.* at ¶ 17.  As a result, through October 2016, Plaintiff and the cleaning crew "were issued work gloves, wraparound safety glasses and masks (that were made for light painting projects)."  *Id.* at ¶ 19.  This equipment, however, did not prevent the dust from getting in their noses or eyes.  *See id.* at ¶ 29.  Therefore, Plaintiff asked Defendant Solomon to provide him and the cleaning crew with respirators, goggles, disposable clothing, and dust masks like those worn by LCCF staff, but Defendant Solomon declined to do so.  *Id.* at ¶¶ 20–21, 23.

Prisoners' exposure to the crystalline silica dust prompted them to file numerous complaints and grievances.  *Id.* at ¶ 34.  One of these prisoners, Donte Powell, told Defendants Smith, Solomon, Mindy Lewis-Ortega (the LCCF Health Service

---

[4] Other than Plaintiff, the composition of the cleaning crew changed from August 2016 to February 2018. *See doc. 22* at ¶¶ 18, 28–29, 63.

Administrator), and Moriama Valeriano (the LCCF grievance coordinator), other LCCF staff, and LCCF prisoners that the dust contained crystalline silica.  *Id.* at ¶ 24.  In response, Defendants Smith and Vasquez twice "shook-down" Mr. Powell's cell and confiscated his material on crystalline silica and evidence of paint grinding.  *Id.* at ¶ 25. Defendants Smith and Solomon also directed Plaintiff to continue to remove paint from LCCF facilities but not grind the paint off doors in Mr. Powell's housing pod until things "cooled off."  *Id.* at ¶ 26.

At some point, Mr. Powell informed Plaintiff that the paint and the dust generated by its removal contained crystalline silica, that inhalation of this mineral could cause lung cancer, and that Plaintiff and the other members of the cleaning crew needed training to remove the paint safely.  *Id.* at ¶¶ 32–33.  This information prompted Plaintiff to reiterate his request to Defendants Smith and Solomon for a respirator, goggles, and protective clothing.  *Id.* at ¶ 32.  Again, these Defendants refused it.  *Id.*

Eight months after joining the cleaning crew, Plaintiff filed an informal complaint about the inadequate protective equipment that he had received to remove the paint.  *Id.* at ¶¶ 38–39.  On April 21, 2017, Defendant Solomon gave Plaintiff and the cleaning crew one pair of goggles and one respirator to share.  *Id.* at ¶ 40.  Plaintiff then filed a grievance about the inadequate protective equipment.  *See id.* at ¶ 56.  Defendant Valeriano responded to it by stating that Defendant Vasquez would conduct safety classes about paint removal.  *Id.* at ¶ 57.  Plaintiff appealed the resolution of this

grievance to Defendant Franco, who affirmed it without any investigation.  *Id.* at ¶¶ 61–62.  No safety classes or training were ever conducted.  *Id.* at ¶ 58.

While Plaintiff's informal complaint and grievance were pending, Defendants Smith and Solomon ordered him and the cleaning crew to remove paint from the doors in the medical unit.  *Id.* at ¶ 41.  Removing paint in this enclosed area created clouds of crystalline silica dust that covered Plaintiff.  *Id.* at ¶¶ 41, 44.  Plaintiff also inhaled this dust because he and the cleaning crew had to share a single respirator.  *Id.* at ¶ 41.  During this time, Plaintiff's exposure to crystalline silica exceeded the Occupational Safety and Health Administration's ("OSHA") permissible exposure limit for an eight-hour shift.  *Id.* at ¶ 43.  On several occasions, LCCF medical staff had the cleaning crew pause its work to allow the dust to settle.  *Id.* at ¶¶ 42–43.  During this time, Defendants Solomon and Vasquez periodically checked in on Plaintiff and the cleaning crew and saw that they were covered in crystalline silica dust and that poor ventilation was causing clouds of dust to gather.  *Id.* at ¶ 44.

Then, from September 2017 to February 2018, Defendant Solomon had Plaintiff and the cleaning crew grind paint off the showers in housing unit 1-A to prepare it for an upcoming audit.  *Id.* at ¶¶ 63, 65.  Initially, Defendant Solomon detailed two members of his maintenance crew to help, but these members quit after one day to escape from the clouds of crystalline silica dust that the job generated.  *Id.* at ¶¶ 63–64.

Sometime between August 2016 and February 2018, a LCCF staff member reported the crystalline silica dust to OSHA, which conducted an inspection. *Id.* at ¶ 72. During the inspection, Defendants Smith and Solomon directed Plaintiff and the cleaning crew to stop removing paint and hide their supplies in an electrical room. *Id.* Once the OSHA inspectors departed, Defendants Smith and Solomon had Plaintiff and cleaning crew resume their work. *Id.* Eventually, Defendant Smith left LCCF and Defendant Solomon disbanded the cleaning crew. *Id.* at ¶ 68.

B. ALLEGED DENIAL OF MEDICAL CARE

Around the time that Mr. Powell briefed Plaintiff on the dangers of crystalline silica, Plaintiff began to suffer from nosebleeds and coughing fits from having inhaled it. *Id.* at ¶ 38. Over time, his symptoms worsened to include shortness of breath, fatigue, and "blood in his mucus membranes." *Id.* at ¶ 46. He filed several medical requests to be checked and treated for exposure to this substance, but only saw the acting physician twice. *Id.* at ¶¶ 47, 49–52. On the first visit, in April 2017, the physician examined his lungs, informed him that his chest was congested, and suggested that he exercise more. *Id.* at ¶ 47. On the second visit, a month later, the physician reexamined his lungs, expressed concern that Plaintiff was trying to file a class action lawsuit because numerous other prisoners had been going to medical for exposure to crystalline silica, and told him that his lungs "were clear." *Id.* at ¶¶ 48–49.

7

As of April 2019, Plaintiff still suffers from a cough, heart palpitations, and shortness of breath that he attributes to his exposure to crystalline silica. *Id.* at ¶ 71.

Plaintiff filed an informal complaint about not receiving a lung screening for crystalline silica. *See id.* at ¶¶ 52, 55. He received a response from Defendant Lewis-Ortega in which she stated that the physician had noted clear lung sounds, and concluded, based on this finding, that no further testing was needed. *Id.* at ¶ 55. Plaintiff then filed a grievance on this issue, which Defendant Valeriano denied. *Id.* at ¶ 59. Plaintiff then appealed the denial to Defendant German Franco, who affirmed it without an investigation. *Id.* at ¶ 60.

## C.  PROCEDURAL HISTORY

Plaintiff then filed a complaint against all Defendants in the Fifth Judicial District Court of New Mexico. *Doc. 1-1.* On June 29, 2018, Defendant Lewis-Ortega removed the complaint to this Court. *Doc. 1.* On March 22, 2019, the Court dismissed Plaintiff's complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A, gave him thirty days to file an amended complaint, and warned him that it would dismiss the amended complaint without further notice if it failed to state a cognizable claim. *Doc. 21* at 8–9.

On April 5, 2019, Plaintiff filed an Amended Complaint, the operative complaint in this matter. *Doc. 22.* Construed liberally, the Amended Complaint asserts nine claims against different combinations of Defendants in both their individual and official

capacities: (1) Eighth Amendment claims against Defendants Smith, Solomon, and Vasquez for disregarding New Mexico Corrections Department Policy CD-100700(Q) and exposing Plaintiff to crystalline silica by having him remove paint containing it without training or adequate protective gear, *id.* at ¶¶ 73, 75, A.1; (2) negligence claims against these three Defendants for exposing Plaintiff to crystalline silica by having him remove the paint in this manner, *id.* at ¶ 73, A.1; (3) Eighth Amendment claims against Defendants Valeriano and Lewis-Ortega for not curbing Plaintiff's exposure to crystalline silica by reporting it to the GEO Group's corporate office, OSHA, or the New Mexico Health Department, *id.* at ¶¶ 74, A.2; (4) an Eighth Amendment claim against Defendant Lewis-Ortega for not providing Plaintiff with access to medical treatment, *id.* at ¶¶ 76, A.3; (5) First Amendment claims against Defendants Valeriano, Vasquez, Lewis-Ortega, and Solomon for colluding to downplay Plaintiff's exposure to crystalline silica during the grievance process, *see id.* at ¶¶ 55–59, 77, A.4; (6) Eighth Amendment claims against these four Defendants for this collusion, *see id.*; (7) negligence claims against these four Defendants for this collusion, *see id.*; (8) an Eighth Amendment claim against Defendant GEO Group for failing to train and supervise its employees properly, *id.* at ¶¶ A.6, B.4; and (9) an Eighth Amendment claim against Defendant Franco for affirming the denials of Plaintiff's grievances without investigating his exposure to crystalline silica, *id.* at ¶¶ 60, 78, A.5, B.3.

On November 12, 2020, the Court reviewed the Amended Complaint pursuant to 28 U.S.C. § 1915A, found that it—as a whole—stated a claim for relief, and directed Defendants to answer it. *Doc. 26*. On December 11, 2020, the GEO Defendants and Defendant Lewis-Ortega did so. *Docs. 30, 31*. On February 16, 2021, Defendant Franco filed a motion to dismiss the claim against him for failure to state a claim for relief. *Doc. 53*. Plaintiff responded to this motion on March 10, 2021. *Doc. 57*. Two weeks later, Defendant Franco replied, *doc. 61*, completing briefing on this motion.

Meanwhile, on December 16, 2020, Jason Helmstetler (another prisoner exposed to crystalline silica at LCCF) filed a motion for joinder. *Doc. 34*. On December 30, 2020, the GEO Defendants and Defendant Lewis-Ortega filed responses in opposition. *Docs. 35, 37*. On January 19, 2021, Plaintiff filed a response and a motion in support. *Docs. 47, 48*. On February 2, 2021, Defendant Lewis-Ortega and the GEO Defendants filed responses in opposition to Plaintiff's motion in support. *Doc. 51, 52*. Briefing was complete on Mr. Helmstetler's motion for joinder and Plaintiff's motion in support of joinder on February 2, 2021, and February 16, 2021, respectively when the deadlines for their respective replies passed without a reply being filed. *See* D.N.M.LR-Civ 7.1(b).

On December 11, 2020, Defendant Lewis-Ortega moved for summary judgment on Plaintiff's Eighth Amendment claims against her, arguing that allegations in the Amended Complaint establish that Plaintiff voluntarily participated in the cleaning crew and that his alleged Eighth Amendment violations cannot arise from such

voluntary participation.  *Doc. 32*.  On December 30, 2020, the GEO Defendants moved

for summary judgment on all Plaintiff's claims against them on the same ground.  *Doc.

36*.  On January 4, 2021, and January 19, 2021, respectively, Plaintiff moved to stay the

adjudication of these summary judgment motions pursuant to Federal Rule of Civil

Procedure 56(d) until he had completed discovery about other prisoners' exposure to

crystalline silica, the medical care that other prisoners had received for this exposure,

and grievances related to their exposure and medical care.  *Docs. 38, 46*.  On January 18,

2021, and February 2, 2021, respectively, Defendant Lewis-Ortega and the GEO

Defendants filed combined responses to Plaintiff's Rule 56(d) motions and replies to

their motions for summary judgment, *docs. 44, 49*, completing briefing on the latter.

Briefing was complete on Plaintiff's Rule 56(d) motions on February 1, 2021, and

February 16, 2021, respectively, when the deadlines for him to reply to Defendant

Lewis-Ortega's and the GEO Defendants' responses elapsed without him doing so.  *See*

D.N.M.LR-Civ 7.1(b).

On February 22, 2021, and again on March 29, 2021, Plaintiff filed a response on

the merits of the GEO Defendant's motion for summary judgment and a supporting

affidavit.  *Docs. 54, 55, 63, 64*.  On February 16, 2021, the GEO Defendants moved the

Court to strike the first of these filings as an impermissible surreply to their motion for

summary judgment.  *Doc. 56*.  On March 18, 2021, Plaintiff responded to this motion,

*doc. 58*, and filed a motion for leave to file a surreply to Defendant Lewis-Ortega's and

the GEO Defendants' motions for summary judgment.  *Doc. 59*.  On April 1, 2021, the

GEO Defendants and Defendants Lewis-Ortega responded to Plaintiff's motion for

leave to file a surreply, *docs. 69, 71*, and the GEO Defendants replied to Plaintiff's

response to their motion to strike, *doc. 66*, completing briefing on this motion, *see doc. 67*.

On April 21, 2021, Plaintiff filed a surreply to the GEO Defendant's motion to strike, *doc.*

*73*, and replied to the responses to his motion for leave to file a surreply, *docs. 74, 76*,

completing briefing on this motion.

On March 18, 2021, Plaintiff also filed a motion for Rule 11 sanctions against

Defendant Lewis-Ortega and the GEO Defendants.  *Doc. 60*.  On April 1, 2021, these

Defendants responded.  *Docs. 68*, *70*.  On April 21, 2021, Plaintiff replied to Defendants'

responses, *doc. 75*, completing briefing on the motion for sanctions.

## II.   THE GEO DEFENDANTS' AND DEFENDANT LEWIS-ORTEGA'S MOTIONS FOR SUMMARY JUDGMENT

Plaintiff's Amended Complaint seeks damages from, and a declaratory judgment

against, Defendant Lewis-Ortega and the GEO Defendants in both their individual and

official capacities.  *Doc. 22* at ¶¶ 10, A.1–A.4, A.6, B.1–B.4.  As noted earlier, he raises

claims of negligence against Defendants Smith, Solomon, Vasquez, Valeriano, and

Lewis-Ortega; First Amendment violations against Defendants Solomon, Vasquez,

Valeriano, and Lewis-Ortega; and Eighth Amendment violations against Defendants

Smith, Solomon, Vasquez, Valeriano, Lewis-Ortega, and GEO Group.  Defendant

Lewis-Ortega seeks summary judgment on the Eighth Amendment claims against her based on Plaintiff's purported voluntary participation in the cleaning crew. The GEO Defendants seek summary judgment on all claims against them on the same basis. Treating those motions for summary judgment as motions to dismiss due to their exclusive reliance on the pleadings, I conclude that the Court should DENY them since the Amended Complaint plausibly establishes that Plaintiff's participation in the cleaning crew was compulsory.

### A. CONVERSION INTO MOTIONS TO DISMISS

While Defendant Lewis-Ortega and the GEO Defendants label their motions as motions for summary judgment, their exclusive reliance on the allegations in the Amended Complaint makes them the functional equivalent of motions to dismiss for failure to state a claim. *See N. Ark. Med. Ctr. v. Barrett*, 962 F.2d 780, 784 (8th Cir. 1992); *Blum v. Morgan Guar. Tr. Co.*, 709 F.2d 1463, 1466 (11th Cir. 1983); *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d. Cir. 1968). The Federal Rules of Civil Procedure do not provide for converting a motion for summary judgment that presents no matters outside of the pleadings into a motion to dismiss. *Cf.* Fed. R. Civ. P. 12(d) (requiring a court to convert a motion to dismiss into a motion for summary judgment if the motion presents, and the court does not exclude, matters outside the pleadings). Nonetheless, this Court and other district courts routinely do so. *See, e.g.*, *Alberto v. Sec'y, Wash. Dep't of Corr.*, Case No. 5:16-cv-287-LC-GRJ, 2020 WL 5519402, at *2 & n. 3

(N.D. Fla. July 13, 2020) (unpublished) (gathering cases); *Cunningham v. New Mexico*,

CIV 13-0142 JP/WPL, 2013 WL 12329145, at *5 (D.N.M. Sept. 5, 2013) (unpublished);

*Noriega v. Home Depot, USA, Inc.*, 11-CV-0091 WPL/WDS, 2011 WL 13284643, at *1

(D.N.M. Oct. 6, 2011) (unpublished).

  Since "conversion is appropriate when the court does not examine extrinsic

evidence, but instead bases its decision solely on the pleadings," *Myers v. Moore*, 326

F.R.D. 50, 58 (S.D.N.Y. 2018) (internal brackets omitted), I conclude that the Court

should do so here.  Notice to the parties is not required before conversion since it does

not impact the documentation that the parties submit to the Court.  *Noriega*, 2011 WL

13284643, at *1 (citing *Katz v. Molic*, 128 F.R.D. 35, 38 (S.D.N.Y. 1989)).  The effect of this

conversion is to moot Plaintiff's Rule 56(d) motions for discovery, the GEO Defendants'

motion to strike, and Plaintiff's motion for leave to file a surreply.

B. LEGAL STANDARD

  "A pro se litigant's pleadings are to be construed liberally and held to a less

stringent standard than formal pleadings drafted by lawyers," but a "broad reading of

the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient

facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).

   [T]his rule means that if the court can reasonably read the pleadings to state a
   valid claim on which the plaintiff could prevail, it should do so despite the
   plaintiff's failure to cite proper legal authority, his confusion of various legal

theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.*

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). When applying the standard, the Court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the Court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement' but … [does] ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A complaint need only to "raise a right to relief above the

15

speculative level . . . on the assumption that all [its] allegations … are true (even if doubtful in fact)." *Id*. at 555 (citations omitted).  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S at 557).

### C.  ANALYSIS

While Defendant Lewis-Ortega and the GEO Defendants correctly argue that voluntary exposure to crystalline silica is not a constitutional violation, *cf. Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that unwillingly exposing a prisoner to unreasonable levels of a carcinogen may violate the Eighth Amendment), they overstate the degree to which the Amended Complaint pleads the voluntariness of this exposure. When the allegations therein are construed liberally and read broadly in their proper context, they establish the plausibility that Defendant Smith ordered Plaintiff to join the cleaning crew and that Plaintiff's ongoing participation in the crew was involuntary.

The Amended Complaint alleges that Defendant Smith created the cleaning crew and assigned Plaintiff to it and that Defendants Solomon, Smith, and Vasquez ordered Plaintiff and the cleaning crew to perform various maintenance tasks, including removing paint containing crystalline silica from LCCF facilities.  *Doc. 22* at ¶¶ 3, 5, 12, 18, 30–31, 41, 58, 63, 65.  There are no specific allegations about the voluntary or compulsory nature of Plaintiff's participation in the cleaning crew.  Given the setting—a

prison—these allegations are sufficient to demonstrate that Plaintiff's participation in the crew and his subsequent exposure to crystalline silica was plausibly compulsory.

Defendant Lewis-Ortega and the GEO Defendants contend that participation must have been voluntary since one crew member quit, and Plaintiff threatened to do so. *Doc. 32* at 3 (citing *doc. 22* at ¶¶ 18, 20); *doc. 36* at 3 (same). However, Plaintiff and the crew member did so since other prisoners were threatening to harm them for disturbing their sleep while working at night. *Doc.* 22 at ¶¶ 18, 20. Given this context, the quitting and threat to do so do not compel the conclusion that participation in the crew was voluntary. It is plausible that, given the choice between physical harm and discipline for quitting the crew, Plaintiff and this crew member preferred the latter.

## III.    DEFENDANT FRANCO'S MOTION TO DISMISS AND RESCREENING THE AMENDMENT COMPLAINT UNDER 28 U.S.C. § 1915A

While the Amended Complaint survives the converted motions to dismiss, upon further review, many of the claims that the Court found to state a claim for relief during its preliminary screening, *see doc. 26*, do not do so upon further review. "[T]he wording of § 1915A does not indicate that a district court may only conduct one review of a prisoner's *pro se* civil action." *McKenzie v. U.S. Dep't of Justice*, 143 F. App'x 165, 168 (11th Cir. 2005) (unpublished). Nor does the "law of the case" doctrine preclude the Court from revisiting its interlocutory order (*doc. 26*) that found that each claim in the Amended Complaint stated a claim for relief. *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217,

1224–25 (10th Cir. 2007) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1247 (10th Cir. 2002) ("A lower court's ability to depart from its own prior decisions is discretionary.").

Since the adjudication of Defendant Lewis-Ortega's and the GEO Defendants' motions affords the Court the opportunity to consider Plaintiffs claims against them in greater detail, I conclude that the Court should VACATE IN PART its earlier order (*doc. 26*) and DISMISS WITH PREJUDICE, pursuant to 28 U.S.C. § 1915A, those claims against these Defendants that, after further review, fail to state a claim upon which relief may be granted. I further conclude that the Court should GRANT Defendant Franco's motion to dismiss and DISMISS WITH PREJUDICE Plaintiff's claims against him for failure to state a claim. As the applicable legal standard for this analysis is the equivalent of that for Defendant Lewis-Ortega's and the GEO Defendants' converted motions to dismiss, I do not repeat it here.

## A.  PLAINTIFF'S EIGHTH AMENDMENT INDIVIDUAL CAPACITY CLAIMS

The Amended Complaint asserts Eighth Amendment claims against each Defendant for exposing Plaintiff to crystalline silica and a separate Eighth Amendment claim against Defendant Lewis-Ortega for depriving him of medical care. While Defendants Smith, Solomon, Vasquez, Lewis-Ortega, Valeriano, and GEO Group are private actors, *see doc. 22* at ¶ 9, the undersigned will assume at this time that their operation of LCCF makes them persons acting under the color of state law for the

purposes of § 1983.  *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) (unpublished) (gathering cases for the proposition that the Tenth Circuit has long assumed, but not decided, that a private prison and its employees act under color of state law for the purposes of prisoner § 1983 suits); *Rosborough v. Mgmt & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

To state an Eighth Amendment claim against a given defendant under § 1983, the Amended Complaint must establish not only that a particular Eighth Amendment violation plausibly occurred but also that the defendant is plausibly liable for it.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). The only Eighth Amendment claims for which the Amended Complaint saisfies this burden are those against Defendants Solomon, Smith, and Vasquez for deliberate indifference to the substantial risk that exposure to crystalline silica posed to Plaintiff's health.

### 1.  *Exposure to Crystalline Silica*

The Amended Complaint claims that all Defendants deprived Plaintiff of his Eighth Amendment rights by not preventing or responding appropriately to his exposure to crystalline silica.  Eighth Amendment deprivations of this nature have an objective and a subjective element: (i) exposure to a level of a hazardous substance that poses an unreasonable risk of serious harm to future health; and (ii) deliberate

indifference to this risk by a prison official.  *See Helling*, 509 U.S. at 35–36.  Beyond these elements, § 1983 only imposes liability on prison officials that have "'*direct personal responsibility*' for the claimed deprivation."  *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010)).

Since the seriousness of the risk to Plaintiff's future health is common to his claims against all Defendants, my analysis starts with it.  It then proceeds defendant by defendant to determine whether those that ordered Plaintiff to remove crystalline silica from LCCF facilities plausibly did so with deliberate indifference to this risk and whether those who did not so order Plaintiff nonetheless personally participated in exposing him to this risk with the requisite indifference.  It concludes that the allegations of the Amended Complaint are only sufficient to establish the plausibility of Defendants Solomon's, Smith's, and Vasquez's liability.

i.   SERIOUS RISK

The allegations of the Amended Complaint establish that Plaintiff's exposure to crystalline silica plausibly posed an unreasonable risk of serious harm to his future health.  The objective element of an Eighth Amendment violation arising from exposure to a hazardous substance requires not only "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused by exposure to [that substance]," but also an "assess[ment of] whether society considers the risk that the prisoner complains of to be so grave that it

violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36. While the general health risks associated with a substance are relevant to these inquiries, they are not dispositive. A prisoner must show that his level of exposure had an attendant risk of serious harm and that, at the time of his exposure, involuntarily subjecting a person to that risk was intolerable. *Durham v. Hood*, 412 F. App'x 127, 130 (10th Cir. 2011) (unpublished).

It is plausible that Plaintiff's exposure to crystalline silica satisfies this standard. Exposure to airborne particles of a known human lung carcinogen poses a risk of serious harm to future health where "the intensity and duration of the exposure [are] both … significant." *Templeton v. Anderson*, 607 F. App'x 784, 787 (10th Cir. 2015) (unpublished) (friable asbestos). While Plaintiff makes no allegations about the intensity and duration required for exposure to crystalline silica to be significant, it is nonetheless plausible that his exposure meets that bar (whatever it may be). For as long as nineteen months,[5] Plaintiff purportedly worked in clouds of crystalline silica dust that lingered for hours, causing him to inhale quantities of this substance that, while unknown, caused irritation to his eyes, nose, and throat and exceeded OSHA's Permissible Exposure Limit for an eight-hour work shift. *See doc. 22* at ¶¶ 23, 28–29, 41–43. Even if OSHA limits are not dispositive as to whether the risk posed by this

---

[5] The Amended Complaint is unclear whether Plaintiff was exposed to crystalline silica every day from August 2016 through February 2018 or only periodically during this time. Since the latter is plausible, I assume it for the purposes of my analysis.

exposure to Plaintiff's health violates contemporary standards of decency, repeated exposures in excess of these limits makes it plausible that these exposures' attendant risk was intolerable under these standards.

ii.    DEFENDANT EDDIE SOLOMON

Defendant Solomon allegedly repeatedly ordered Plaintiff to remove paint containing crystalline silica from LCCF facilities without providing him with the necessary protective equipment to do so without endangering his future health.[6] *See doc. 22* at ¶¶ 18, 26–27, 31, 41, 63.  Based on the allegations of the Amended Complaint, it is plausible that Defendant Solomon did so with deliberate indifference to the serious risk that inhaling crystalline silica posed to Plaintiff's future health.

Deliberate indifference requires that a prison official not only "was subjectively aware of the risk" but also "recklessly disregarded [it]."  *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (internal brackets omitted).  Such awareness requires both knowledge "of the facts from which the inherence could be drawn that a substantial risk of serious harm exists" and the drawing of this inference.  *Id.* at 1210.  It is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" and "the very fact that the risk was obvious."  *Farmer v.*

---

[6] Plaintiff claims that this conduct violates NMCD policy CD-100700(Q), *doc. 22* at ¶ 75, but does not plead the specifics of that policy.  Therefore, I do not rely on this conclusory claim in my analysis save for noting that "failure to follow procedures does not, by itself, rise to the level of deliberate indifference." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000).

*Brennan*, 511 U.S. 825, 842 (1994). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson*, 877 F.3d at 1210 (quoting *Farmer*, 511 U.S. at 844).

Here, Defendant Solomon plausibly knew that Plaintiff's exposure to crystalline silica posed a serious risk to Plaintiff's future health. Donte Powell, a prisoner at LCCF, allegedly informed him that the paint that Plaintiff was removing from LCCF facilities contained crystalline silica and that this substance was a carcinogenic. *Doc. 22* at ¶¶ 24, 30. A safety data sheet that he purportedly possessed for that paint also contained this information. *See id.* at ¶ 14. As for knowledge of the extent of Plaintiff's exposure to this carcinogen, after becoming aware that crystalline silica was carcinogenic, Defendant Solomon allegedly learned from other staff that Plaintiff and the cleaning crew were creating clouds of silica dust that lingered for hours. *Id.* at ¶¶ 23, 28, 31. He also purportedly learned from Plaintiff that the glasses and paper dust masks that he had provided the crew were not preventing them from inhaling the dust. *See id.* at ¶¶ 20–21, 38–39. Finally, he allegedly periodically observed Plaintiff and other members of the cleaning crew covered in this dust when checking in on them. *Id.* at ¶ 44. These qualitative allegations about Defendant Solomon's first and secondhand knowledge of the extent of Plaintiff's exposure to a known carcinogen are sufficient to establish that

he plausibly understood Plaintiff's ongoing exposure to this substance to pose a serious risk to Plaintiff's future health.

Similarly, the allegations in the Amended Complaint are sufficient to establish the plausibility that Defendant Solomon recklessly disregarded this risk.  After Defendant Solomon learned that crystalline silica was carcinogenic and that removing paint containing this substance was creating clouds of crystalline silica dust that Plaintiff was inhaling, he continued to order Plaintiff to grind and scrape paint off LCCF facilities.  *Doc. 22* at ¶¶ 41, 63.  While he eventually provided Plaintiff and the cleaning crew with a pair of goggles and a respirator, *id.* at ¶ 40, Plaintiff had to share this protective equipment with the rest of the crew and so continued to inhale crystalline silica when another member of the crew was using it, *id.* at ¶ 41.  It is plausible that requiring Plaintiff to share one set of protective equipment with other members of the crew is not a reasonable response to any serious risk that the clouds of crystalline silica dust in poorly ventilated areas posed to Plaintiff's future health.

### iii.   DEFENDANT D. VASQUEZ

Similar to Defendant Solomon, Defendant Vasquez purportedly repeatedly ordered Plaintiff to remove paint containing crystalline silica from LCCF facilities without providing him with training to do so safely.  *See id.* at ¶¶ 4, 31, 57–58, 72.  Based on the allegations of the Amended Complaint, it is plausible that Defendant Vasquez did so with deliberate indifference to the serious risk that inhaling crystalline silica

posed to Plaintiff's future health.  Not only did Defendant Vasquez learn from Mr.

Powell that the paint contained a carcinogen, but he reviewed the safety data sheet for

the paint that Plaintiff was removing, which contained this information.  *Id.* at ¶¶ 24, 57.

He also received complaints from other prisoners and staff that removing the paint was

generating clouds of dust where Plaintiff worked, and periodically saw Plaintiff

covered in this dust while working.  *Id.* at ¶¶ 24, 30–31, 44.  These qualitative allegations

about exposure to a known carcinogen are sufficient to establish that Defendant

Vasquez plausibly perceived Plaintiff's ongoing exposure to pose a serious risk to

Plaintiff's future health when he failed to conduct promised safety classes for Plaintiff

and continued to order Plaintiff to remove paint from LCCF facilities.  *Id.* at ¶¶ 31, 57–

58, 72.

     iv.    Defendant Raymond Smith

Defendant Smith allegedly assigned Plaintiff to Defendant Solomon's cleaning

crew and ordered him to remove the paint containing crystalline silica from LCCF

facilities.  *See id.* at ¶¶ 12, 26, 31, 41.  Based on the allegations of the Amended

Complaint, it is plausible that Defendant Smith did so with deliberate indifference to

the serious risk that the inhalation of this substance posed to Plaintiff's future health.

There is no indication that Defendant Smith knew that this paint contained a carcinogen

when he first ordered Plaintiff to remove the paint from LCCF facilities, *cf. id.* at ¶¶ 13,

57 (alleging that only Defendants Solomon and Vasquez possessed the safety data

sheets about this paint).  But Defendant Smith did allegedly later learn from Mr. Powell

that the paint contained crystalline silica and that this substance was carcinogenic.  *Id.* at

¶ 24.  As for knowledge of the extent of Plaintiff's exposure to this carcinogen, while

Defendant Smith never observed Plaintiff working in clouds of crystalline silica dust, he

purportedly knew from other LCCF staff and prisoners that Plaintiff's removal of the

paint was generating clouds of dust containing this substance.  *Id.* at ¶ 31.  He also

allegedly knew from Plaintiff that the dust masks and safety glasses that had been

issued to the cleaning crew were not preventing Plaintiff from inhaling it.  *See id.* at ¶¶

19, 32.  Therefore, when he ordered Plaintiff to remove paint from the medical unit and

the showers, *id.* at ¶¶ 41, 65, it is plausible that he did so with deliberate indifference to

the risk that removing that paint posed to Plaintiff's future health.

v.   Defendant German Franco

Defendant Franco allegedly "rubber stamped" the denial of Plaintiff's grievances

about his exposure to crystalline silica on appeal without investigating their allegations.

*Id.* at ¶ 60; *see also id.* at ¶¶ 61–62, 78.  Since he is a supervisor and did not order or

otherwise directly participate in Plaintiff's exposure to this substance, the Amended

Complaint only states a claim against him if its allegations establish an "affirmative

link" between him and Plaintiff's exposure to the serious risk to his future health.  *See*

*Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016).  Such a link entails more than

supervising a prison official who exposed Plaintiff to this risk.  *See id*.  It requires three

interrelated showings: (i) personal involvement in exposing Plaintiff to this risk; (ii) proximate causation in exposing Plaintiff to this risk; and (iii) deliberate indifference[7] to this risk.  *See Farmer*, 511 U.S. at 828; *Keith*, 843 F.3d at 838.  By alleging that Defendant Franco's sole involvement in Plaintiff's exposure was denying and not investigating grievances about it, the Amended Complaint fails to demonstrate that the first showing is plausible.[8]

"Denial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation for the purposes of a Section 1983 claim."  *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013) (unpublished) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009), and *Brown v. Cline*, 319 F. App'x 704, 705–06 (10th Cir. 2009) (unpublished)).  For an Eighth Amendment violation, denying or failing to adequately investigate a grievance is only sufficiently connected to that violation if the grievance notifies a prison official of an ongoing, substantial risk to a prisoner's health or safety, the official has immediate,

---

[7] Prior to *Iqbal*, 556 U.S. at 678, deliberate indifference was the culpable mental state for all § 1983 claims against supervisors regardless of the constitutional violation alleged.  *See Dodds v. Richardson*, 614 F.3d 1185, 1196–98 (10th Cir. 2010).  Now, a supervisor's culpable mental state depends on the alleged constitutional violation.  *Id.* at 1198. Here, that mental state is deliberate indifference since Plaintiff alleges an Eighth Amendment violation.  *See Farmer*, 511 U.S. at 834.  While the terms for these mental states are the same, their standards are different.  The standard for deliberate indifference in the Eighth Amendment context is subjective, while its counterpart in the pre-*Iqbal* supervisory liability context was objective. *See id.* at 841.

[8] Since the allegations do not make the first showing for an affirmative link, I do not reach the questions of whether they make the second or third showing.

direct authority independent of the grievance process to address this risk, and the official does not reasonably do so. *See Brooks v. Colo. Dep't of Corr.*, 715 F. App'x 814, 821 (10th Cir. 2017) (unpublished) (distinguishing the denial of a grievance about not receiving a special meal pass by a prison official with immediate authority to give the prisoner that pass from the general rubber-stamping of grievance denials); *Whitington v. Ortiz*, 307 F. App'x 179, 191–93 (10th Cir. 2009) (unpublished) (holding that, while a prisoner's grievances and complaints informed two prison officials of his ongoing hygiene product deprivation, the only official that personally participated in the continued deprivation was the one whom prison regulations gave the discretion to end it); *cf. Arocho v. Nafziger*, 367 F. App'x 942, 955–56 (10th Cir. 2010) (unpublished) (holding that a prison warden did not personally deprive a prisoner of recommended medical treatment by denying a grievance about it since the warden lacked the authority to give the prisoner access to the treatment).

The Amended Complaint does not establish that Defendant Franco had direct, immediate authority, independent from his role as the final adjudicator of grievances, to address Plaintiff's ongoing exposure to an unreasonable amount of crystalline silica. The only allegation about Defendant Franco's authority outside of the grievance process is that he "is the director of Adult Prisons in the State of New Mexico." *Doc. 22* at ¶ 8. Pleading that a prison official is divisional head of a state's prison program does not itself establish that the official plausibly had direct and immediate authority to end a

particular constitutional violation occurring in a prison within that program. *See Parker v. Allbaugh*, 844 F. App'x 75, 76–78 (10th Cir. 2021) (unpublished) (holding that the Director of the Oklahoma Department of Corrections did not personally participate in an alleged, ongoing First Amendment violation by denying a grievance about it on appeal); *Gallagher*, 587 F.3d at 1069 (same but for the Kansas Secretary of Corrections)); *Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 838, 843 (10th Cir. 2004) (unpublished) (holding that a prison warden did not personally participate in an alleged, ongoing Eighth Amendment violation by ignoring correspondence about a prisoner's complaints about his medical care).  Compared to the direct and immediate authority of the prison officials in *Brooks* and *Whittington* to cure ongoing Eighth Amendment violations raised in prisoners' grievances (by respectively issuing a meal pass and either giving the prisoner money for hygiene product purchases or treating him as indigent for the purpose of furnishing free hygiene products), any inherent authority that Defendant Franco had, as the director of adult prisons for the State of New Mexico, to end Plaintiff's exposure to unreasonable levels of crystalline silica was too far removed and indirect for his failure to do so to amount to personal participation in the exposure's continuance.

Plaintiff makes several unconvincing arguments otherwise.  First, Plaintiff argues that Defendant Franco was personally involved in his exposure to crystalline silica since he "set policy and gave orders."  *Doc. 57* at 2 (citing *Connor v. Reinhard*, 847 F.2d 384, 397

(7th Cir. 1988), *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007), and *Valdes v. Crosby*, 450 F.3d 1231, 1239–43 (11th Cir. 2006)).  As a matter of law, Plaintiff is correct that § 1983 "impose[s] liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" whose enforcement (by the defendant-supervisor or his subordinates) subjects an individual, or causes an individual to be subjected, to the deprivation of a constitutional right.  *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Plaintiff's Amended Complaint, though, does not plead that Defendant Franco created, implemented, or enforced any policy, let alone a policy related to Plaintiff's exposure to unreasonable levels of crystalline silica.  It just pleads that Defendant Franco did not adequately investigate Plaintiff's grievances before affirming their denials.  *See doc. 22* at ¶¶ 8, 60–62.

Second, Plaintiff contends that Defendant Franco was personally involved in his exposure to unreasonable levels of crystalline silica since he has a routine of not investigating constitutional violations that prisoners raise in the grievance process.  *Doc. 57* at 3–4 (citing *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81–82 (1st Cir. 2005)).  This contention, though, encounters the same pitfall as the previous one since Plaintiff pleads no such routine in his Amended Complaint.  Even if that were not the case, a routine of not investigating constitutional violations raised in the grievance process without a sufficient connection to Plaintiff's exposure to crystalline silica does not amount to

personal participation in this exposure.  *See Sherratt*, 545 F. App'x at 747.  As explained

above, Plaintiff alleges no such connection here.

Finally, Plaintiff maintains that Defendant Franco personally participated in his

exposure to crystalline silica since Defendant Franco's failure to investigate or take

remedial action against prison officials for this exposure after learning about it through

the grievance process amounted to a tacit authorization of its continuance.  *Doc. 57* at 2–

4, 6 (citing *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990), *Leach v. Shelby Cnty. Sheriff*,

891 F.2d 1241, 1246 (6th Cir. 1989), *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001),

*Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985), *Johnson v. Pearson*, 316 F.

Supp. 2d 307, 322 n.8 (E.D. Va. 2004), *Verser v. Elyea*, 113 F. Supp. 2d 1211, 1215 (N.D. Ill.

2000), and *McPherson v. Coombe*, 29 F. Supp. 2d 141, 145 (W.D.N.Y. 1998)).  Prior to *Iqbal*,

556 U.S. 662, the Tenth Circuit held that a supervisor personally participates in a

constitutional violation by knowingly acquiescing to its continuance.  *Jenkins v. Wood*, 81

F.3d 988, 995 (10th Cir. 1996).  It is unclear, however, whether this basis for supervisory

liability survives *Iqbal*.  *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 794 n.8 (10th Cir.

2013) (unpublished).  Even if it does, the Tenth Circuit has rejected the proposition that

the divisional head in a state's prison system tacitly acquiesces to a constitutional

violation's continuance by not intervening to end it after learning about it from a

grievance.  *See Parker*, 844 F. App'x at 76–78; *Gallagher*, 587 F.3d at 1069.

Of the litany of cases cited by Plaintiff, only the district court cases dispute this

proposition. *See Johnson*, 316 F. Supp. 2d at 322 n.8 (holding that a warden of a state

prison and a regional director were personally involved in exposing a prisoner to

environmental tobacco smoke since they directly rebuffed the prisoner's concerns about

it in administrative grievance proceedings); *McPherson*, 29 F. Supp. 2d at 145 (same but

for a prison superintendent); *Verser,* 113 F. Supp. 2d at 1215 (holding that a prisoner

plausibly pled that a prison's chief administrative officer and the head of a state prison

system were personally involved in depriving him of medical care by alleging that these

individuals concurred with the denial of the prisoner's grievance appeal about this

deprivation).  Out-of-circuit, pre-*Iqbal* district court cases about supervisory liability are

not persuasive, especially when they clash with the Tenth Circuit's jurisprudence.  As

for the circuit court cases cited by Plaintiff, none comes from the Tenth Circuit,

postdates *Iqbal*, or challenges Tenth Circuit jurisprudence holding that a divisional head

in a state's prison system does not personally participate in the continuance of an

ongoing constitutional violation solely by denying a grievance about it.  *See Fruit,* 905

F.2d at 1148–51 (prison supervisor had individual liability where he *affirmed discipline* of

prisoners who refused to perform a dangerous task without proper protective

equipment); *Leach*, 891 F.2d at 1246 (setting out the standard for showing individual

liability for a supervisor but not considering what type of conduct amounted to

knowing acquiescence); *Gomez*, 255 F.3d at 1122–27 (administrators' failure to

investigate, correct, or discipline prison officials for retaliating against prisoners for

pursuing lawsuits or grievances supported the trial court's finding that there was an

official policy condoning retaliation); *Grandstaff*, 767 F.2d at 169-72 (evidence that a

police chief subsequently accepted his officers' dangerous recklessness by not

reprimanding them, discharging them, or changing police policy on the use of force

entitled the jury to infer that the chief had a tacit policy approving the officers' use of

deadly force in conscious disregard of the rights and safety of innocent third parties).

### vi.   Defendants Mindy Lewis-Ortega & Mariama Valeriano

The extent of Defendants Lewis-Ortega's and Valeriano's alleged participation in

exposing Plaintiff to crystalline silica and its attendant risk to his future health was

colluding with Defendants Vasquez and Solomon to downplay Plaintiff's grievances

about this exposure and not notifying the GEO Group's corporate office, OSHA, or the

local health department about it.  *Doc. 22* at ¶¶ 74, 77, A.2, A.4.  Even if these

Defendants acted with deliberate indifference to that risk in doing so (a question which

I do not reach), their acts and omissions do not amount to personal participation in

Plaintiff's exposure to this risk.

Colluding with other prison officials to downplay Plaintiff's grievances about his

exposure is not personal participation in it.  As noted earlier, a prison official only

personally participates in an ongoing Eighth Amendment violation by denying a

grievance about it if the grievance notifies the prison official about an ongoing,

substantial risk to a prisoner's health, the prison official has immediate and direct authority independent of the grievance process to address this risk, and the prison official does not reasonably do so.  The only allegations in the Amended Complaint about the authority of Defendants Lewis-Ortega and Valeriano is that the former was the health administrator and the latter was the grievance coordinator.  *See doc. 22.* at ¶¶ 6–7.  These allegations do not plausibly establish that either Defendant had immediate and direct authority, independent of the grievance process, to intervene to stop Defendants Solomon, Smith, and Vasquez—the acting warden, physical plant manager, and fire safety manager respectively, *id.* at ¶¶ 3–5—from exposing Plaintiff to amounts of crystalline silica that posed a serious risk to his future health.

Not reporting Plaintiff's exposure to crystalline silica to either the GEO Group's corporate office or a federal or state health department does not constitute personal participation in that exposure.  This argument sounds in bystander liability, which, like supervisory liability, arises from the principle that "an omission to act, when coupled with a duty to act, may provide a basis for liability" under § 1983.  *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002).  In the § 1983 context, this theory of liability arises more commonly in the law enforcement context where law enforcement officials have an affirmative duty "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008).  There, a law

enforcement official breaches this duty if he knows that a colleague (or even a supervisor) is violating an individual's constitutional rights, has a reasonable opportunity to intervene, and does not do so.  *Id.* (excessive force); *Reid v. Wren*, 57 F.3d 1081, 1995 WL 339401, at *2 (10th Cir. 1995) (unpublished table decision) (unlawful entry).  The Tenth Circuit has extended bystander liability to a prison official who witnesses a prisoner being beaten and ignores a reasonable opportunity to intercede. *See Gruenwald v. Maddox*, 274 F. App'x 667, 674 (10th Cir. 2008) (unpublished).  Courts have cautioned, though, that this theory of liability "is not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees."  *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003).

Assuming bystander liability even extends to a prisoner's exposure to unreasonable levels of a hazardous substance, it is nonetheless inapplicable here since Defendants Lewis-Ortega and Valeriano did not have a duty to report Plaintiff's exposure to the GEO Group's corporate office, OSHA, or the local health department, or a reasonable opportunity to otherwise intervene to limit that exposure.  No policy is alleged to have required these Defendants to report Plaintiff's exposure to the GEO Groups' corporate office or any government agency.  *Cf. Whitington*, 307 F. App'x at 193 (holding that a grievance officer, who had knowledge of a prisoner's deprivation of hygiene items, did not personal participate in the deprivation by failing to intervene to end it where no policy gave him the authority to do so).  Nor is such a duty inherent in

Defendants Lewis-Ortega's and Valeriano's respective specific positions as a health service administrator and grievance coordinator. *See doc. 22* at ¶¶ 6–7 (alleging that the sole duties of the former are providing medical treatment for plaintiffs and that the only duties of the latter are investigating, resolving, and/or recommending dispositions for grievances). Nor does a duty arise from their general status as prison officials. *See Whitington*, 307 F. App'x at 193.

With respect to reasonable opportunity to intervene, the Amended Complaint does not plausibly establish that either Defendant Lewis-Ortega or Defendant Valeriano had any opportunity, outside the grievance process, to prevent Defendants Solomon, Smith, and Vasquez from exposing Plaintiff to unreasonable amounts of crystalline silica. Neither Defendant is alleged to have been present when Defendants Solomon, Smith, and Vasquez ordered Plaintiff to remove the paint containing this substance from LCCF despite the risk that it posed to his future health. *Cf. Smith v. Mensinger*, 293 F.3d 641, 651 (3d. Cir. 2002) ("The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force."). Nor is either Defendant alleged to have had authority to intervene to mitigate this risk. *See Arocho*, 367 F. App'x at 955–56 (holding that a prison warden did not personally participate in depriving a prisoner of recommended medical treatment since the warden had no authority to remedy the prisoner's non-receipt of that treatment). Defendant Lewis-Ortega's authority for medical treatment provision

does not plausibly extend to ensuring that Plaintiff received adequate safety equipment or training. Similarly, Defendant Valeriano's grievance responsibilities lack such authority. Therefore, these Defendants' failure to report or otherwise take steps to limit Plaintiff's exposure to crystalline silica is not personal participation in that exposure.

    vii.    DEFENDANT GEO GROUP

The extent of Defendant GEO Group's alleged participation in exposing Plaintiff to crystalline silica and its attendant risk to his future health is failing to train and supervise its employees adequately. *Doc. 22* at ¶¶ A.6, B.4. Although § 1983 could subject Defendant GEO Group to liability under this theory, the allegations in the Amended Complaint are insufficient to establish it.

Defendant GEO Group's liability under § 1983 is that of a city. *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 945 (10th Cir. 2005) (unpublished); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). A city cannot be held liable under § 1983 "*solely* because it employs a tortfeasor—or in other words, … on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (first emphasis added). Rather, "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). Stating a claim for relief against Defendant GEO Group under § 1983

requires Plaintiff's Amended Complaint to establish the same.  *See Smedley*, 175 F. App'x

at 946 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–85 (1986), and *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985))

> Defendant GEO Group's alleged policy or custom may take one of five forms:
>
> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).  Here, the only

"policy or custom" pled against Defendant GEO Group is that its improper training and

supervision of its employees exposed Plaintiff to crystalline silica in violation of his

Eighth Amendment rights.  *See doc. 22* at ¶¶ A.6, B.4.  The sole allegations made under

this theory are that "Defendant GEO Group, Inc. is the employer of all the named

Defendants in this matter, and is responsible for their training and ensuring state

policies and laws are followed" and that its failure to do so properly "led to the

violation of … Plaintiff's Eight Amendment rights."  *Id.* at ¶¶ 9, A.6.  Such conclusory

allegations do not state a claim of municipal liability.  *See Waller*, 932 F.3d at 1289.

Specifically, these allegations do not identify any specific inadequacies in

Defendant GEO Group's training or supervision of its employees that directly caused

Plaintiff to be exposed to crystalline silica.  Without allegations identifying specific

deficiencies in training or supervision that are closely related to this exposure, the

causal connection between it and Defendant GEO Group's training and supervision is

too attenuated for liability to attach.  *See City of Canton v. Harris*, 489 U.S. 378, 391–92

(1989); *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (requiring a plaintiff to

"identify a specific deficiency in the [defendant's] training program closely related to

his ultimate injury"), *abrogated in part on other grounds*, *Brown v. Flowers*, 974 F.3d 1778,

1182 (10th Cir. 2020).  Permitting cases with such attenuated causation to proceed

"would result in *de facto respondeat superior* liability" on municipalities and private

corporations operating prisons—a result the Supreme Court rejected in *Monell*, 438 U.S.,

at 693–94.  *City of Canton*, 489 U.S. at 392.

### 2.  *Deprivation of Medical Care*

In addition to the Eighth Amendment claims against all Defendants about

exposure to crystalline silica, the Amended Complaint also claims that Defendant

Lewis-Ortega violated Plaintiff's Eighth Amendment rights by not providing him with

the medical care that he requested for this exposure.  The allegations therein, however,

are insufficient to support this claimed violation.

While prisoners have an Eighth Amendment right to adequate medical care, not

every instance where a prisoner does not receive the medical care that he desires

violates this amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Perkins v. Kan.*

*Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").  For deprivation of medical care to amount to an Eighth Amendment violation, a prison official must be deliberately indifferent to an objectively serious medical need.  *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018).  "A medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id*. (internal brackets omitted).

Even if Plaintiff's alleged medical needs were objectively serious (a question that I do not reach), the Amended Complaint does not establish that Defendant Lewis-Ortega acted with deliberate indifference to them.  Non-medical staff like Defendant Lewis-Ortega are not deliberately indifferent to a prisoner's medical needs if they reasonably rely on the judgment of prison medical staff about the necessary treatment for those needs.  *Phillips*, 508 F. App'x at 744; *Arocho*, 367 F. App'x at 956.  Defendant Lewis-Ortega ignored Plaintiff's repeated requests to have his lungs screened for scar tissue caused by crystalline silica exposure and denied his informal complaint against the LCCF physician for not referring him for this screening since the physician had concluded that his lungs were fine.  *Doc. 22* at ¶¶ 50–55, 59.  Nothing in the Amended Complaint indicates that it was unreasonable for Defendant Lewis-Ortega to rely on the LCCF physician's express conclusion that Plaintiff's lungs were fine and her implicit

conclusion that a scar tissue screening was not warranted.  While this physician did allegedly accuse Plaintiff of trying to file a class action before examining his lungs, *id.* at ¶ 49, the Amended Complaint does not establish that Defendant Lewis-Ortega was aware of this accusation (even if such an accusation were sufficient to render reliance on the physician's conclusion unreasonable).

### B.  PLAINTIFF'S FIRST AMENDMENT INDIVIDUAL CAPACITY CLAIMS

The Amended Complaint also claims that Defendants Valeriano, Vasquez, Lewis-Ortega, and Solomon violated Plaintiff's First Amendment rights by colluding to downplay his grievances.  *Id.* at ¶¶ 53, 56, 59, 77, A.4.  This alleged collusion does not violate the First Amendment since the Amendment does not give prisoners a right for their grievances to be handled and adjudicated appropriately.  *See Merryfield v. Jordan*, 431 F. App'x 743, 749–50 (10th Cir. 2011) (unpublished) (inadequate grievance adjudication does not violate First Amendment).

### C.  PLAINTIFF'S NEGLIGENCE INDIVIDUAL CAPACITY CLAIMS

In addition to the constitutional claims, the Amended Complaint raises negligence claims against Defendants Solomon, Smith, and Vasquez for ordering Plaintiff to remove crystalline silica paint from LCCF facilities without providing him with adequate training or protective equipment to do so safely and against Defendants Solomon, Smith, Vasquez, Lewis-Ortega and Valeriano for colluding to downplay

Plaintiff's grievances about this exposure.  *Doc. 22* at ¶¶ 73, 77, A.1.  While these

Defendants are employees of Defendant GEO Group rather than the State of New

Mexico, as jailers, they are public employees for the purposes of the New Mexico Tort

Claims Act ("NMTCA") and so are immune from tort liability while acting as jailers

except as waived by the NMTCA.  *See* N.M. Stat. Ann. § 33-3-28(A) (deeming private

jailors law enforcement officers for purposes of the NMTCA); *id.* § 41-4-3(F)(2) (defining

public employee as inclusive of law enforcement officers); *id.* § 41-4-4(A) (granting

public employees acting within the scope of their duties tort immunity except as

waived by the NMTCA).  Therefore, to state a negligence claim against a given

defendant, the Amended Complaint must show not only that that the defendant owed

Plaintiff a duty recognized by law, that the defendant breached that duty, and that

breach proximately caused Plaintiff harm, but also that the alleged negligence falls

within the scope of a NMTCA waiver.  The Amended Complaint only does so with

respect to Defendants Solomon, Smith, and Vasquez.

### i.   DEFENDANTS SOLOMON, SMITH, AND VASQUEZ

The allegations in the Amended Complaint plausibly establish each element of

negligence as to Defendants Solomon, Smith, and Vasquez and that their alleged

negligence falls within the ambit of the waiver in N.M. Stat. Ann. § 41-4-6(A) for

negligent operation or maintenance of a building.  Breach, harm, and causal connection

are each generally a question of fact for the jury.  *Lerma ex rel. Lerma v. State Highway*

*Dep't*, 877 P.2d 1085, 1087–88 (N.M. 1994); *Schear v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 687 P.2d 728, 729 (N.M. 1984).  But "[w]hether a duty exists is a question of law for the courts to decide."  *Schear*, 687 P.2d at 729.  As jailors, Defendants Solomon, Smith, and Vasquez each had a "duty to exercise reasonable and ordinary care for the protection of the life and health of … person[s] in [their] custody," like Plaintiff.  *City of Belen v. Harrell*, 603 P.2d 711, 713 (N.M. 1979).  Based on the allegations in the Amended Complaint, they plausibly breached this duty by ordering Plaintiff to remove paint containing crystalline silica from LCCF facilities without adequate protection, which plausibly caused Plaintiff harm in the form of fatigue, shortness of breath, fits of coughing, and blood in his mucus membranes.[9]

---

[9] My analysis does not consider alleged injuries in the form of Plaintiff's increased risk of contracting cancer, emotional distress caused by the feared increased risk, or the embedment of crystalline silica particles in his lungs.  New Mexico tort law may not allow Plaintiff to recover for some, if not all, of these alleged injuries.  *Compare Alberts v. Schultz*, 975 P.2d 1279, 1285 (N.M. 1999) (differentiating a lost chance of avoiding physical harm from an increased risk of future harm and recognizing the former as recoverable in negligence), *with Madrid v. Lincoln Cnty. Med. Ctr.*, 923 P.2d 1154, 1163 (N.M. 1996) (holding that emotional distress arising from the fear that another has caused one to contract HIV is recoverable in negligence).  Outside of New Mexico, states have split over whether such injuries are recoverable in tort and evidentiary showings required to do so.  *Compare Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1204-06 (6th Cir. 1988) (applying Tennessee law) (allowing recovery for increased risk of cancer if cancer is medically reasonably certain to follow from existing present injury and for fear of contracting cancer if it is the natural consequence of present injury), *and Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 818 (Cal. 1993) (allowing recovery for fear of contracting cancer if it is more likely than not that plaintiff will develop cancer in the future due to the toxic exposure), *with Deleski v. Raymark Indus., Inc.*, 819 F.2d 377, 380 (3d. Cir. 1987) (applying New Jersey law) (not allowing recovery for increased risk of illness or the emotional distress arising from that risk absent present physical manifestation of illness or injury); *see also Am. Optical Corp. v. Spiewak*, 73 So. 3d 120, 129 (Fla. 2011) (recognizing the involuntary inhalation of asbestos fibers as an injury recoverable in tort).  Since the physical harms that Plaintiff has already allegedly suffered from his exposure to crystalline silica are recoverable under New Mexico tort law, I need not, and so do not, consider whether New Mexico tort law, in general, and the NMTCA, in particular, also allow him to recover for any increased risk of cancer, fears about that risk, or crystalline silica particles in his lungs.

Turning to the issue of waiver, the alleged negligence of Defendants Solomon, Smith, and Vasquez plausibly falls within the ambit of NMTCA Section 41-4-6.  This Section waivers immunity for "liability for damages resulting from bodily injury … caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M. Stat. Ann. § 41-4-6(A).  The New Mexico Supreme Court construes this waiver "broadly to waive immunity 'where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government.'"  *Encinias v. Whitener Law Firm, P.A.*, 310 P.3d 611, 616–17 (N.M. 2013) (quoting *Castillo v. Cnty. of Santa Fe*, 755 P.2d 48, 49 (N.M. 1988)).  Clouds of carcinogenic crystalline silica dust are an unsafe or dangerous condition.

ii.   DEFENDANTS VALERIANO AND LEWIS-ORTEGA

In contrast, the allegations in the Amended Complaint do not plausibly establish that Defendants Lewis-Ortega and Valeriano breached any duty owed to Plaintiff.  Plaintiff's exposure to crystalline silica was caused by Defendants Solomon, Smith, and Vasquez ordering him to remove paint containing that substance from LCCF facilities without adequate protective gear, rather than the independent existence of airborne crystalline silica.  Therefore, the duty is this context is not prison officials' general duty in *Harrell* to exercise reasonable and ordinary care over prisoners in their custody.

44

Rather, it is their specific duty under the Second Restatement of Torts § 320 to exercise reasonable care so as to prevent third persons from conducting themselves in a manner that creates an unreasonable risk of harm to a prisoner where they reasonably know that they have the ability to control these persons and of the necessity and opportunity for doing so.  *See* Restatement (Second) of Torts § 320; *Methola v. Eddy Cnty.*, 629 P.2d 350, 354 (N.M. Ct. App. 1981) (holding that jailers have a duty to exercise reasonable care in preventing prisoners from attacking another prisoner).  Based on the allegations of the Amended Complaint, it is not plausible that either Defendant Lewis-Ortega or Valeriano, as the health service administrator and grievance coordinator respectively, had any authority over or other ability to control the conduct of Defendants Solomon, Smith, and Vasquez—the physical plant manager, acting warden, and fire safety manager respectively—or overrule these individuals' decisions with respect to the training and protective equipment given to Plaintiff.  Therefore, neither Defendant Lewis-Ortega nor Defendant Valeriano had a duty to exercise reasonable care in preventing Defendants Solomon, Smith, and Vasquez from exposing Plaintiff to crystalline silica.

While the general duty of reasonable care is not displaced in other contexts (e.g., Plaintiff's access to medical care or the adjudication of his grievances), the allegations in the Amended Complaint are insufficient to establish that either Defendant Lewis-Ortega and Valeriano breached this duty in those contexts.  Since Plaintiff does not have

any liberty interest in an adequate grievance procedure, *see Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017) (unpublished), Defendants Lewis-Ortega and Valeriano's alleged downplaying of these grievances is not an injury recoverable in tort. As for medical care, Defendant Lewis-Ortega's refusal to grant Plaintiff his desired crystalline silica exam did not breach her duty of reasonable care to him since she reasonably relied on the LCCF's physician's finding that this exam was unwarranted.

### D. PLAINTIFF'S OFFICIAL CAPACITY CLAIMS

The Amended Complaint also sues Defendants Smith, Vasquez, Solomon, Lewis-Ortega, and Valeriano in their official capacities. *Doc. 22* at ¶ 10. An official capacity suit against an employee of a private prison company operating a county prison is a suit against the company itself. *Tavasci v. Cambron*, No. CIV 16-0461 JB/LF, 2017 WL 3173011, at *28–29 (D.N.M. May 31, 2017) (unpublished) (citations omitted); *McMurray v. Emerald Corr. Mgmt., LLC*, Civ. No. 15-969 GBW/CG, 2016 WL 10588128, at *5 (D.N.M. Mar. 25, 2016) (unpublished) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), and *Myers v. Okla. Cnty. Bd of Cnty. Commr's*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). Since the Amended Complaint does not state a claim for relief against Defendant GEO Group, the alleged employer of Defendants Smith, Vasquez, Solomon, Lewis-Ortega, and Valeriano, *see doc. 22* at ¶ 9, it does not state claims against these Defendants in their official capacities.

The Amended Complaint also sues Defendant Franco in his official capacity for both damages and a declaratory judgment.  As Defendant Franco is a state official, the Eleventh Amendment bars the claims against him in his official capacity for damages. *See Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020).  Similarly, since Plaintiff's exposure to crystalline silica has ceased, *see doc. 22* at ¶ 68 (asserting that the cleaning crew is disbanded), the Eleventh Amendment bars Plaintiff's claims against Defendant Franco in his official capacity for a declaratory judgment.  *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (clarifying that only declaratory judgments about ongoing violations of federal law are excepted from the Eleventh Amendment).

## IV.    PLAINTIFF'S MOTION FOR SANCTIONS

Pursuant to Rule 11, Plaintiff moves the Court to sanction Defendant Lewis-Ortega and the GEO Defendants for filing motions for summary judgment asserting that his participation in the cleaning crew was voluntary.  *Doc. 60.*  Because this motion complies with neither the procedural nor substantive requirements of Rule 11, the Court should DENY it but NOT AWARD Defendant Lewis-Ortega and the GEO Defendants the reasonable expenses incurred defending it.

Rule 11(b) notices both attorneys and unrepresented parties that, by presenting a written motion to the Court, they are certifying to the best of their knowledge, information, and belief, formed after a reasonable inquiry that: (i) the motion is not being presented for any improper purpose; (ii) the claims and legal contentions are

warranted by existing law or by a nonfrivolous argument to change the law; (iii) the factual contentions therein have evidentiary support; and (iv) the denials of factual contentions are warranted based on evidence.  Fed. R. Civ. P. 11(b).  Rule 11(c) gives the Court the discretion to sanction an attorney, law firm, or party for violating Rule 11(b) after issuing an order to show cause or upon a separately filed motion delineating the alleged violation(s).  *Id.* (c)(1)-(3).  Pursuant to Rule 11(c)'s safe harbor provision, a party seeking Rule 11 sanctions via motion must serve that motion on the alleged Rule 11(b) violator at least twenty-one days before filing it in court to provide the violator with an opportunity to withdraw its filing or appropriately correct alleged violation(s) therein. *Id.* (c)(2).  Awarding sanctions where the movant has not complied with this requirement is an abuse of discretion.  *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006).

Plaintiff's motion does not comply with Rule 11(c)(2)'s safe harbor requirement. Plaintiff contends that he discharged this requirement by notifying Defendants in his Motion to Deny or Stay GEO Defendants Motion for Summary Judgment and his Response Supporting Jason Helmstetler's Motion for Joinder that he intended to move for sanctions against them for claiming that he voluntarily participated in the cleaning crew.  *Doc. 75.* at ¶¶ 2–3 (citing *docs. 48, 54, 55*).  Neither his Rule 56(d) motion nor his response to the motion to joinder is the separate motion that Rule 11(c)(2) requires to be served on purported Rule 11(b) violators.  *See Roth*, 466 F.3d at 1192 ("[T]he plain language of [Rule 11(c)] requires a copy of the actual motion for sanctions to be served

on the person(s) accused of sanctionable behavior at least twenty-one days before the filing of that motion.").

Similarly, the conduct described in Plaintiff's motion for sanctions does not violate Rule 11(b). Plaintiff insists that Defendant Lewis-Ortega's and the GEO Defendants' factual contention in their motions for summary that his participation in the cleaning crew was voluntary is a "lie to mislead the Court." *Doc. 60* at ¶ 2. In doing so, he misinterprets Rule 11(b)'s requirements with respect to factual contentions. The rule only requires those presenting a motion to the court to certify that the factual contentions therein have evidentiary support or are likely to have such support after further investigation. Fed. R. Civ. P. 11(b)(3). The voluntariness of Plaintiff's participation in the cleaning crew is a fact that has not yet been determined in this case and its ultimate determination is irrelevant to whether Defendant Lewis-Ortega's and the GEO Defendants' contention about it had support. At this stage, all that matters is whether the contention had support in the Amended Complaint.

It did so. As noted in these Defendants' motions for summary judgment, *doc. 32* at 3; *doc. 36* at 3, the Amended Complaint alleges that one prisoner quit the detail and that Plaintiff threatened to do so, *doc. 22* at ¶¶ 18, 20. While the Amended Complaint also asserts that prison officials ordered Plaintiff to remove paint from LCCF facilities, *id.* at ¶¶ 3, 5, 12, such assertions may reasonably be read to refer to orders to perform tasks as a member of the cleaning crew rather than to participate in the detail itself.

Admittingly, I have read these assertions otherwise in finding that the Amended Complaint plausibly establishes that Plaintiff's participation in the detail was compulsory. This finding, though, does not mean that Defendant Lewis-Ortega's and the GEO Defendants' contention had no basis in the Amended Complaint.

Finally, awarding Defendant Lewis-Ortega and the GEO Defendants the reasonable costs, including attorney's fees, pursuant to Rule 11(c)(2) is unwarranted. Plaintiff's *pro se* status does not excuse him from complying with the fundamental requirements of Rule 11, *see Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), but it should give the Court some pause before assigning him the costs of his noncompliance absent a showing of bad faith, especially where the ease of parrying his allegations makes Defendants' reasonable costs insubstantial. *Cf. Guttman v. Silverberg*, 374 F. Supp. 2d 991, 994 (D.N.M. 2005) (declining to sanction a *pro se* plaintiff under Rule 11 where he proceeded from a misunderstanding of rules and procedures rather than in bad faith). Plaintiff, however, is advised that such leniency may not be available for future Rule 11 motions now that he has notice of Rule 11's requirements.

## V.   JASON HELMSTETLER'S MOTION FOR JOINDER

Pursuant to Rule 20(a)(1), Jason Helmstetler moves to join this case as a plaintiff based on his exposure to crystalline silica at LCCF. *Doc. 34*. Since Mr. Helmstetler is not yet a party to this case, I conclude that the Court should CONSTRUE his motion as

a motion to intervene under Rule 24(b) and DENY it for not containing or incorporating a complaint that states a claim for relief as to him.

Only an existing party to a lawsuit may move for permissive joinder pursuant to Rule 20. *See Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995); *Thompson v. Boggs*, 33 F.3d 847, 858 n.10 (7th Cir. 1994); *Garland v. United States*, No, CV 13-0496 RB/GBW, 2013 WL 12328894, at *2 (D.N.M. Sept. 11, 2013) (unpublished). Where a nonparty erroneously moves to join a lawsuit under Rule 20, courts construe the motion as one for permissive intervention pursuant to Rule 24. *Thompson*, 33 F.3d at 858 n.10; *Garland*, 2013 WL 12328894, at *2; *see also Arrow*, 55 F.3d at 409 (construing a motion for compulsory joinder under Rule 19 as a motion to intervene under Rule 24).

Rule 24 provides that "[o]n timely motion, the [C]ourt may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "Such permissive intervention … requires (1) an independent basis of subject matter jurisdiction, (2) a timely motion, and (3) a common question of law and fact between the movant's claim or defense and the main action." *Lovato v. Banister*, Civ. No. 03-0629 MV/WDS, 2004 WL 7337740, at *2 (D.N.M. May 25, 2004) (unpublished) (citing *United States v. Washington*, 86 F.3d 1499, 1506-07 (9th Cir. 1996), and *E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). "In exercising its discretion, the court must consider whether the

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P 24(b)(3).

Procedurally, a motion to intervene must not only state the grounds for intervention but also "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." *Id.* (c). "[I]f the proposed complaint-in-intervention does not state a valid claim for relief, the motion must be denied." *Davis v. St. Anselm Expl. Co.*, No. 10-CV-883 JEC/WPL, 2011 WL 13085929, at *2 (D.N.M. Oct. 3, 2011) (unpublished) (quoting *Lucero ex rel. Chavez v. City of Albuquerque*, 140 F.R.D. 455, 457 (D.N.M. 1992)). When denying intervention on this ground, the Court need not determine whether the motion to intervene satisfies the substantive requirements of Rule 24. *Lovato*, 2004 WL 7337740, at *4.

Mr. Helmstetler's converted motion to intervene does not contain the pleading required by Rule 24(c). Even if the Court were to construe its allegation that Mr. Helmstetler "ha[s] suffered the same factual injuries as set forth in the complaint" by being "recklessly exposed to crystalline that covered my dining area, phones and housing unit while at [LCCF]," *doc. 34* at ¶ 1, as a complaint-in-intervention, this conclusory allegation does not state a claim for relief. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the

plaintiff believes the defendant violated.").  Alternatively, the Court could construe this allegation as Mr. Helmstetler adopting Plaintiff's Amended Complaint as his complaint in intervention.  *See Alexander v. Hall*, 64 F.R.D. 152, 156 (D.S.C. 1974).  This construction, however, does not salvage his motion since the Amended Complaint contains no allegations about the extent to which he (rather than Plaintiff) was exposed to crystalline silica and whether any Defendant acted with deliberate indifference toward him.  Indeed, it contains no allegations about him at all.  *See generally doc. 22*. Accordingly, Mr. Helmstetler's converted motion to intervene should be denied.

## VI.   PLAINTIFF'S MOTION FOR JOINDER

Pursuant to Rule 20(a), Plaintiff moves to join Mr. Helmstetler to this case as a plaintiff.  *Doc. 47*.  Since the Amended Complaint does not state a claim as to Mr. Helmstetler and the logistical and security concerns inherent in two-plaintiff prisoner litigation undermine the interests in judicial economy and convenience that Rule 20(a) seeks to promote, I recommend that the Court DENY Plaintiff's motion for joinder.

Permissive joinder under Rule 20(a) is a matter of the Court's discretion.  *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983).  It is permissible where

> (i) the claims by or against the party to be joined arise from the same transaction, occurrence, or series of transactions or occurrences underlying the claims by or against the party it seeks to join; and (ii) the claims by or against the party to be joined share at least one question of law or fact with the claims by or against the party it seeks to join.

*Green v. Padilla*, 484 F. Supp. 3d 1098, 1124–25 (D.N.M. 2020).  The rule "is to be construed liberally in order to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* at 1150 (quoting *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977)).

"Many federal district courts have found that the pervasive impracticalities associated with multiple-plaintiff prisoner litigation militate against permissive joinder otherwise allowed by Fed. R. Civ. P. 20(a)(1)." *Bourn v. Geo Grp., Inc.*, No. 11-cv-02628-BNB, 2012 WL 451286, at *2 (D. Colo. Feb. 13, 2012) (unpublished) (six prisoners); *see also Boretsky v. Corzine*, No. 08-2265 (GEB), 2008 WL 2512916, at *5 (D.N.J. June 23, 2008) (unpublished) (gathering cases); *Adams v. GEO Grp., Inc.*, No. CIV-21-297-D, 2021 WL 2407436, at *1 (W.D. Okla. Apr. 13, 2021) (unpublished) (two prisoners).  Even when prisoners are housed in the same facility, restrictions on interpersonal communication within a detention facility pose challenges to coordination, circulating and jointly revising pleadings and motions before their filing, and signing court documents as required under Rule 11(a).  *Palacios v. Corr. Corp. of Am.*, CV 11-0584 MV/WPL, 2012 WL 13076596, at *9 (D.N.M. Sept. 14, 2012) (unpublished); *Bourn*, 2012 WL 451286, at *2.  Prisoners are also "'subject to transfer at any time to a facility other than the one where they are currently incarcerated,' which can further complicate such coordination" and joint motion practice.  *Palacios*, 2012 WL 13076596, at *9 (quoting *Torrez v. Corr. Corp. of Am.*, No. CV 09-2298-PHX-MHM, 2010 WL 320486, at *1 (D. Ariz. Jan. 20, 2010)

(unpublished)).  Such transfers may put the Court "in the position of ordering prison

official to allow co-plaintiff inmates to correspond with each other, in derogation of

facially valid and legitimate prison policy."  *Id.* (quoting *Osterloth v. Hopwood*, No. CV

06-152-M-JCL, 2006 WL 3337505, at *3 n.4 (D. Mont. Nov. 16, 2006) (unpublished)).  In

addition to these logistical and security concerns, multiple-plaintiff prisoner litigation

"also raises concerns that pro se prisoner plaintiffs might be seeking to impermissibly

provide legal assistance to each other in pursuing their claims."  *Id.* (citations omitted).[10]

Given the complications and burdens inherent in multiple-prisoner litigation,

joining Mr. Helmstetler to this case would frustrate, rather than advance, the interests of

convenience and judicial economy that underlie Rule 20.  *See Palacios*, 2012 WL

13076596, at *10 (declining to consolidate two pro se prisoners' separate cases due to the

complications and burdens inherent in two-prisoner litigation); *Adams*, 2021 WL

2407436, at *2 (dismissing a joined prisoner plaintiff from an action filed by two

prisoners without prejudice with instruction to pursue an independent action).

Plaintiff contends that the appointment of counsel would alleviate these

difficulties.  *Doc. 47* at 3.  The Court, though, lacks the authority to appoint counsel in

---

[10] In addition to the practical concerns about multi-plaintiff prisoner litigation, the joinder of multiple prisoner plaintiffs may be unlawful.  *Compare Hubbard v. Haley*, 262 F.3d 1194, 1197–98 (11th Cir. 2001) (holding that 28 U.S.C. § 1915(b)(1) precludes joining pro se prisoner's plaintiffs pursuant to Rule 20 lest a prisoner use the rule to escape the act's requirement that a prisoner bringing an action pay the full amount of a filing fee), *with Hagan v. Rogers*, 570 F.3d 146, 154–55 (3d Cir. 2009) (holding that 28 U.S.C. § 1915(b)(1) does not repeal or modify Rule 20), *and Boriboune v. Berge*, 391 F.3d 852, 854 (7th Cir. 2004) (same).  The Tenth Circuit has not yet opined in this debate.  *See Woodruff v. Wyoming*, 49 F. App'x 199, 202 n.1 (10th Cir. 2002) (unpublished).

civil cases like this one or reimburse counsel for time spent litigating cases like these. The most that the Court may do is request an attorney to represent Plaintiff (and Mr. Helmstetler if he were joined) for free.  *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016).  Each year, the Court receives far more requests for such representation than the number of attorneys available to provide it.  This shortage of pro bono attorneys forces the Court to triage these requests and only request these attorneys to represent "clearly deserving litigants."  *Id.* at 397.  The Court has already found that, at this stage of proceedings, this case is not one of the few that warrants a request for pro bono representation.  *Doc. 62*.  Plaintiff's desire to join another prisoner does not change this finding.

Aside from the logistical and security concerns, joining Mr. Helmstetler to this case is improper because, as noted earlier, the Amended Complaint does not state a claim for relief as to him.  "In spite of the great liberality of Rule 20(a), the rule does not excuse any of the joined parties from the obligations to state a claim against defendant or defendants upon which relief may be granted."  7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1656 & n.29 (3d ed. 2021) (gathering cases). Plaintiff's motion for joinder claims that Mr. Helmstetler was a prisoner at LCCF when Plaintiff was exposed to crystalline silica, *doc. 47* at 2, but no such allegations exist in the Amended Complaint, *see generally doc. 22*.  Nor does this Complaint include any allegations about the extent of Mr. Helmstetler's exposure to crystalline silica or

Defendants' deliberate indifference to the serious risk that it posed to his health. Given the absence of any factual allegations about Mr. Helmstetler and the logistical and security problems that his joinder may pose, joining him to this case as a Plaintiff is not a proper use of the Court's discretion. If Mr. Helmstetler wishes to seek vindication for his exposure to crystalline silica, he must bring a suit against Defendants himself.

## VII.    CONCLUSION

For the reasons above, I RECOMMEND that the Court do the following: (i) CONVERT Defendant Mindy Lewis-Ortega's and the GEO Defendants' Motions for Summary Judgment into Motions to Dismiss and DENY them; (ii) DENY as MOOT Plaintiff's motions to deny or stay the summary judgment motions pending discovery; (iii) GRANT Defendant Franco's Motion to Dismiss and DISMISS WITH PREJUDICE all of Plaintiff's claims against him; (iv) DENY as MOOT the GEO Defendants' Motion to Strike and Plaintiff's Motion for Leave to File Surreply; (v) DENY Plaintiff's Motion for Sanctions; (vi) CONSTRUE Jason Helmstetler's Motion for Joinder as a motion to intervene and DENY it; and (vii) DENY Plaintiff's Motion in Support of Joinder.

I FURTHER RECOMMEND that the Court (i) VACATE IN PART its order (*doc. 26*), dated November 12, 2020, finding that all the claims in the Amended Complaint survive preliminary screening under 28 U.S.C. § 1915A; (ii) DISMISS WITH PREJUDICE all Plaintiff's claims against Defendants Lewis-Ortega, Valeriano, and the GEO Group and Plaintiff's First Amendment claims against Defendants Vasquez and Solomon

pursuant to 28 U.S.C. § 1915A for not stating a claim on further review; and (iii) ORDER

Defendants Smith, Solomon, and Vasquez to prepare a *Martinez* report on Plaintiff's

Eighth Amendment and negligence claims that survive this review.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**