**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CARNELL HUNNICUTT SR.,

     Plaintiff,

v.                                                                    Civ. No. 18-619 JCH/GBW

RAYMOND SMITH, *et al.*,

     Defendants.

**ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on the following:

1.  Plaintiff's objections to the Magistrate Judge's order denying appointment of counsel (Doc. 72);

2.  The Magistrate Judge's PRFD (Doc. 77) ("PFRD No. 1"), recommending that the Court do the following: (i) convert Defendant Mindy Lewis-Ortega's and the GEO Defendants'[1] motions for summary judgment (Doc. 32; Doc. 36) into motions to dismiss and deny them; (ii) deny as moot the GEO Defendants' Motion to Strike (Doc. 56) and Plaintiff's motions to deny or stay the summary judgment motions pending discovery (Doc. 38; Doc. 46) and for leave to file surreply (Doc. 59); (iii) grant Defendant Franco's Motion to Dismiss (Doc. 53) and dismiss with prejudice all Plaintiff's claims against him; (iv) construe Jason Helmstetler's Motion for Joinder (Doc. 34) as a motion to intervene and deny it; (v) deny Plaintiff's Motion in Support of Joinder (Doc. 47) and his Motion for Sanctions (Doc. 60); (vi) rescreen Plaintiff's

---

[1] The GEO Defendants are Defendants Raymond Smith, D. Vasquez, Eddie Solomon, Moriama Valeriano, and GEO Group, Inc.

Amended Complaint under 28 U.S.C. § 1915A and dismiss with prejudice all claims against Defendants Lewis-Ortega, Valeriano, and the GEO Group and Plaintiff's First Amendment and official capacity claims against Defendants Vasquez, Solomon, and Smith; and (vii) order Defendants Vasquez, Solomon, and Smith to prepare a *Martinez* report on the Eighth Amendment and negligence claims against them;

3. Plaintiff's and the GEO Defendants' objections to parts of PFRD No. 1 (Doc. 82; Doc. 83) and their associated briefing (Doc. 84; Doc. 85; Doc. 86; Doc. 87); and

4. The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 79) ("PFRD No. 2"), recommending that the Court construe Edward Morris Garcia's Motion for Joinder (Doc. 78) as a motion to intervene and deny it.

Having conducted an independent, *de novo* review of the GEO Defendants' and Defendant Lewis-Ortega's motions for summary judgment and Defendant Franco's Motion to Dismiss, their attendant briefing (Doc. 44; Doc. 49; Doc. 57; Doc. 61);[2] the portions of the Magistrate Judge's PFRD No. 1 recommending dispositions for these motions and Plaintiff's motions to deny or stay the motions for summary judgment, the rescreening of Plaintiff's Amended Complaint pursuant to § 1915A, and the dismissal of some of Plaintiff's claims pursuant to that statute; and Plaintiff's and the GEO Defendants' objections to these recommendations, the Court OVERRULES the parties' objections and ADOPTS the recommendations in PFRD No. 1 for the GEO Defendants' and Defendant Lewis-Ortega's motions for summary judgment, Plaintiff's motions to deny or stay these motions for summary judgment, Defendant Franco's Motion to Dismiss, and the rescreening of Plaintiff's Amended Complaint pursuant to § 1915A. The Court, therefore, CONVERTS the

---

[2] The Court does not consider the surreply and supporting affidavit that Plaintiff twice filed in response to the GEO Defendants' motions for summary judgment (Doc. 54; doc. 55; doc. 63; doc. 64) because he filed them without leave of the court. *See* D.N.M.LR-Civ. 7.4(b).

GEO Defendants' and Defendant Lewis-Ortega's motions for summary judgment into motions to dismiss and DENIES them, DENIES AS MOOT Plaintiff's motions to deny or stay these motions for summary judgment, GRANTS Defendant Franco's Motion to Dismiss, and DISMISSES WITH PREJUDICE all of Plaintiff's claims against Defendants Franco, Lewis-Ortega, Valeriano, and the GEO Group as well as Plaintiff's First Amendment and official capacity claims against Defendants Vasquez, Solomon, and Smith.

Having reviewed, for clear error and mistakes in law, the Magistrate Judge's order denying the appointment of counsel, his PFRD No. 2 recommending that the Court convert Mr. Garcia's Motion for Joinder into a motion to intervene and deny it, and the remainder of the Magistrate Judge's recommendations in PFRD No. 1, the Court OVERRULES Plaintiff's objections to the order denying appointment of counsel and ADOPTS the recommendations in PFRD No. 2 and the remaining recommendations in PFRD No. 1.  The Court, therefore, DENIES Mr. Garcia's and Mr. Helmstetler's converted motions to intervene and Plaintiff's motions for joinder and for sanctions, and DENIES AS MOOT the GEO Defendants' Motion to Strike and Plaintiff's Motion for Leave to File Surreply.

## BACKGROUND

This case arises from Plaintiff's alleged exposure to clouds of carcinogenic crystalline silica dust at the Lea County Correctional Facility ("LCCF") while, as a member of a cleaning crew, he removed paint containing this substance from the facility's doors, showers, and other surfaces for approximately nineteen months without adequate protective equipment. *See generally* Doc. 22.  After Defendant Lewis-Ortega removed Plaintiff's original complaint to this Court, Doc. 1, the Court dismissed it without prejudice pursuant to 28 U.S.C. § 1915A and granted Plaintiff leave to file an amended complaint, Doc. 21 at 9.  After Plaintiff did so within the allotted time,

3

*see* Doc. 22, the Court found that his Amended Complaint survived preliminary screening under § 1915A, *see* Doc. 26, directed Defendants to answer, *see id.*, and referred the case to the Magistrate Judge to conduct hearings and perform legal analysis pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) and *Virginia Beach Federal Savings & Loan Association v. Wood*, 901 F.2d 849 (10th Cir. 1990), *see* Doc. 27.

A flurry of motions ensued.  Defendant Lewis-Ortega and the GEO Defendants filed motions for summary judgment, Doc. 32; Doc. 36, which Plaintiff moved the Court to deny or stay pending discovery, Doc. 38; Doc. 46.  After Defendants filed their replies, Doc. 44; Doc. 49, Plaintiff filed two surreplies to the GEO Defendants' motion, Doc. 54; Doc. 63.  The GEO Defendants then moved the Court to strike the first surreply, Doc. 56, at which point Plaintiff moved the Court for leave to file it, Doc. 59, and for sanctions against GEO Defendants, Doc. 60. In the interim, Jason Helmstetler moved the Court for joinder, Doc. 34, which Plaintiff supported via motion, Doc. 47.  Plaintiff also moved the Court to appoint counsel, Doc. 40, and Defendant Franco moved the Court to dismiss Plaintiff's claims against him for failure to state a claim, Doc. 53.

On March 28, 2021, the Magistrate Judge denied Plaintiff's Motion to Appoint Counsel. Doc. 62.  On April 16, 2021, the Court received Plaintiff's timely objections to the Magistrate Judge's decision.  Doc. 72.

On August 16, 2021, the Magistrate Judge entered PFRD No. 1 recommending that the Court (i) convert Defendant Mindy Lewis-Ortega's and the GEO Defendants' motions for summary judgment into motions to dismiss and deny them; (ii) deny as moot the GEO Defendants' Motion to Strike, Plaintiff's motions to deny or stay the summary judgment motions, and Plaintiff's Motion for Leave to File Surreply; (iii) grant Defendant Franco's Motion to Dismiss

(Doc. 53) and dismiss with prejudice all Plaintiff's claims against him; (iv) construe Mr. Helmstetler's Motion for Joinder as a motion to intervene and deny it; and (v) deny Plaintiff's Motion in Support of Joinder and his Motion for Sanctions.  Doc. 77 at 57.  The Magistrate Judge also recommended that the Court revisit its Memorandum Opinion and Order finding that all the claims in Plaintiff's Amended Complaint survive § 1915A screening; dismiss with prejudice all claims against Defendants Lewis-Ortega, Valeriano, and the GEO Group and the First Amendment and official capacity claims against Defendants Vasquez, Solomon, and Smith; and order Defendants Vasquez, Solomon, and Smith to prepare a *Martinez* report on the Eighth Amendment and negligence claims that remain against them in their individual capacities.  *Id.* at 57–58.  Three days later, the Clerk of the Court mailed Mr. Helmstetler a copy of this PFRD, which advised him that he had fourteen days to file objections.  Plaintiff and the GEO Defendants filed timely objections to PFRD No. 1.  *See* Doc. 81; Doc. 82; Doc 83.  On September 6, 2021, the deadline for Mr. Helmstetler to file objections passed without him doing so.

Meanwhile, Edward Morris Garcia filed a Motion for Joinder.  Doc. 78.  On August 18, 2021, the Magistrate Judge entered PFRD No. 2, recommending that the Court construe Mr. Garcia's Motion as a motion to intervene and deny it and ordering Mr. Garcia to file objections within fourteen days.  Doc. 79.  The following day, the Clerk's office mailed Mr. Garcia a copy of this PFRD.  On September 6, 2021, the deadline for Mr. Garcia to file objections passed without him doing so.

## LEGAL STANDARDS

The pending motions, PFRDs, and objections implicate both 28 U.S.C. § 636(b)(1)(A) and (B) since they entail dispositive motions and non-dispositive pretrial matters.  28 U.S.C. § 636(b)(1)(A) allows the Court to "designate a magistrate judge to hear and determine any pretrial

matter pending before the court," except a motion for summary judgment, a motion to dismiss

for failure to state a claim, and six other types of dispositive motions that are inapplicable here.

28 U.S.C. § 636(b)(1)(A).  If a party objects to the magistrate judge's order on these matters

within fourteen days, the Court must review the order under a "clearly erroneous or contrary to

law" standard of review.  *Id;* Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard requires affirmance unless the Court "is left with the

definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow*

*Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333

U.S. 364, 395 (1948)).  Review pursuant to a "contrary to law" standard is plenary; however, "it

is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the

district judge." 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

3069 (3d ed. 2020).

As for dispositive motions, the remainder of 28 U.S.C. § 636(b)(1) provides that the

Court "may also designate a magistrate judge to conduct hearings, including evidentiary

hearings, and to submit to [it] a [PFRD] of any motion excepted in [28 U.S.C. § 636(b)(1)(A)]"

and that the Court may subsequently "accept, reject, or modify [the PFRD], in whole or in part,

… receive further evidence[,] or recommit the matter to the magistrate judge with instructions."

*Id.* § 636(b)(1)(B), (C).  Parties disagreeing with a magistrate judge's PFRD have fourteen days

to serve and file specific written objections.  *Id.* § 636(b)(1)(C).  Failure to file timely, specific

objections waives *de novo* review by the district court and appellate review.  *United States v.*

*2121 E. 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996); *see also Thomas v. Arn*, 474 U.S. 140,

149–50 (1985).  If a party files timely, specific objections, the Court must "make a de novo

determination of those portions of the [PFRD] to which objection is made."  28 U.S.C. §

636(b)(1)(C).  "[A] brief order expressly stating the court conducted de novo review is sufficient."  *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (citing *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995)).  Parts of the PFRD to which no timely, specific objection is made are subject to review under the clear error and contrary to law standard.  *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). The Court may, though, exercise its discretion to review these parts *de novo.  See 2121 E. 30th St.*, 73 F.3d at 1061.

## ANALYSIS

The Court reviews *de novo* the Magistrate Judge's recommendations in PFRD No. 1 that the Court do the following: (i) convert the GEO Defendants' and Defendant Lewis-Ortega's motions for summary judgment into motions to dismiss and deny them; (ii) deny as moot Plaintiff's motions to deny or stay these summary judgment motions; (iii) grant Defendant Franco's Motion to Dismiss; and (iv) rescreen the Amended Complaint pursuant to 28 U.S.C. § 1915A.  The Court also reviews *de novo* the Magistrate Judge's findings in PFRD No. 1 that, after rescreening, Plaintiff's Amended Complaint only states negligence and Eighth Amendment claims against Defendants Smith, Vasquez, and Solomon in their individual capacities and does not state any claim for relief against Defendants Lewis-Ortega, Valeriano, or the GEO Group. The Court reviews, for clear error and contrary to law, the Magistrate Judge's remaining findings and recommendations in PFRD No.1, the entirety of PFRD No. 2, and the Magistrate Judge's order denying Plaintiff appointment of counsel.  The order, findings, and recommendations all pass these reviews.

I.     ***De Novo* Review of the Magistrate Judge's Recommended Dispositions for the GEO Defendants' and Defendant Lewis-Ortega's Motions for Summary Judgment, Plaintiff's Motions to Deny or Stay These Motions, Defendant Franco's Motion to Dismiss, and the Magistrate Judge's Finding on Rescreening that the Amended Complaint Only States Negligence and Eight Amendment Claims against Defendants Smith, Solomon, and Vasquez.**

Upon *de novo* review, the Court concurs with the Magistrate Judge's recommended

dispositions for the GEO Defendants', Defendant Lewis-Ortega's, and Defendant Franco's

dispositive motions and Plaintiff's motions to deny or stay the motions for summary judgment;

his recommendation that the Court rescreen Plaintiff's Amended Complaint under § 1915A; and

his finding that the only claims surviving this review are Plaintiff's Eighth Amendment and

negligence claims against Defendants Smith, Solomon, and Vasquez in their individual

capacities.  Since the Court agrees with the Magistrate Judge's analysis and is not obligated to

repeat it here to discharge its obligations under 28 U.S.C. § 636(b)(1), *see Garcia v. City of

Albuquerque*, 232 F.3d 760, 766–67 (10th Cir. 2000); *Northington*, 102 F.3d at 1570, the Court

limits its written analysis to rebutting the specific objections that it received to that analysis.

Therefore, it only details its rejection of the GEO Defendants' objections.

A.  *Involuntariness of Plaintiff's Exposure to Crystalline Silica.*

The GEO Defendants object to the Magistrate Judge's recommendation that the Court

deny their converted motion to dismiss. They contend that the Amended Complaint cannot be

read to establish the plausibility that Plaintiff's exposure to crystalline silica was involuntary

since it alleges that another prisoner quit the cleaning crew and that Plaintiff threatened to do so

without alleging that either of them was punished for their actions.  Doc. 83 at 3–4; Doc. 87 at 2.

The Court rejects this argument because it would require replacing the applicable pleading

standard with one reliant on technicalities, reading the allegations of the Amended Complaint in

a vacuum, and ignoring the known realities of prison and Plaintiff's status as a prisoner proceeding *pro se*.

"A pro se litigant's pleadings are to be construed liberally." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is a lower burden than probability. *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Making allowances for Plaintiff's status as a pro se litigant, the allegations in the Amended Complaint are sufficient to establish the plausibility of involuntary participation in the cleaning crew. Plaintiff alleges that he was ordered to join the cleaning crew and to remove paint from various surfaces as a member of that crew *See* Doc. 22 at ¶¶ 3, 12, 22, 26–27, 31, 41, 63, 65. Prison work is involuntary where a prisoner would face punishment for not performing it, *see Morgan v. Morgensen*, 465 F.3d 1041, 1045–46 (9th Cir. 2006); *Rish v. Johnson*, 131 F.3d 1092, 1094 n.3 (4th Cir. 1997), such as when nonperformance amounts to disobedience of a prison official's order, *see Ambrose v. Young*, 474 F.3d 1070, 1078 (8th Cir. 2007); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987).

The GEO Defendants emphasize that "there are no allegations in the Amended Complaint to suggest inmates who quit [the crew] were subjected to discipline for doing so." Doc. 83 at 4.

This argument ignores that "technical fact pleading is not required." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (internal brackets omitted) (quoting *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  A pro se litigant does not have to plead every fact in specific detail so long as the Court can reasonably infer the unarticulated assumptions that are necessary for his claims. *Bryson*, 534 F.3d at 1287; *Hall*, 935 F.2d at 1110.  Common sense allows the Court to reasonably infer an allegation that Plaintiff would have been punished for disobeying orders by quitting the cleaning crew from the allegation that Plaintiff is a prisoner, the allegation that he was ordered to participate in the crew, and common knowledge that prisoners are generally subject to punishment for disobeying orders, *see, e.g.*, *Tigert v. Higgins*, 290 F. App'x 93, 95–96 (10th Cir. 2008) (unpublished) (prisoner lost good time credits for refusing an order to perform prison work); *Ladd v. Davies*, 937 F.2d 616, 1991 WL 134314, at *1 (10th Cir. 1991) (unpublished table decision) (prisoner disciplined for refusing an order to report to a prison work project); *Hill v. Myers*, Civil Action No. 18-cv-00909-RM-KLM, 2020 WL 3036068, at *2 (D. Colo. June 5, 2020) (unpublished) (prisoner lost a job in kitchen for refusing an order to clean).

The GEO Defendants also argue that Plaintiff's allegations that another prisoner quit the cleaning crew and that he threatened to do so establish, as a matter of law, that his ongoing participation in the cleaning crew was voluntary. Doc. 83 at 3–4.  Implicit in this argument is the claim that LCCF staff would not have punished Plaintiff for quitting the cleaning crew.  Indeed, it may be inferred from the fact that a prisoner quit a job that he has been ordered to perform or that he threatened to do so that refusing the work order was not subject to punishment.  However, that is not the only reasonable inference.  In fact, that inference is less compelling here since Plaintiff threatened to quit the crew and the other prisoner did so after they received "threats of bodily harm from inmates" for disturbing these prisoners' sleep while working at night. *See*

Doc. 22 at ¶¶ 18, 20.  Given this context, it is also plausible that the work crew inmates were

willing to quit (or threaten to do so) despite the possibility of institutional punishment.  Of

course, the Court's conclusion on this issue does not reach beyond the four corners of Plaintiff's

Amended Complaint.  Defendants Smith, Solomon, and Vasquez remain free to argue in a

motion for summary judgment based on evidence adduced in a *Martinez* report that Plaintiff's

participation in the cleaning crew was voluntary and that he would not have faced punishment

for quitting and produce all reasonably available evidence to that effect.

  B. *Plaintiff's Eighth Amendment Claims against Defendants Smith, Vasquez, and Solomon*

Defendants Smith, Vasquez, and Solomon object to the Magistrate Judge's finding that,

upon further review under § 1915A, the Amended Complaint states Eighth Amendment claims

against them.  They contend that the Amended Complaint's allegations establish neither that

Plaintiff suffered the substantial harm required for an Eighth Amendment claim nor that they

acted with a sufficiently culpable state of mind.  *See* Doc. 83 at 4–6.

Eighth Amendment claims arising from conditions of confinement have two elements: (i)

a substantial risk of serious harm to a prisoner; and (ii) deliberate indifference to that risk by a

prison official.  *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017).  The first element is

objective and the second is subjective.  *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001).

In the medical context, "a medical need is considered 'sufficiently serious' if the condition 'has

been diagnosed by a physician as mandating treatment or is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention.'"  *Oxendine v. Kaplan*, 241 F.3d

1272, 1276 (10th Cir. 2001) (internal ellipsis omitted) (quoting *Hunt v. Uphoff*, 199 F.3d 1220,

1224 (10th Cir. 1999)).  As for the subjective element, deliberate indifference exists where a

prison official knew that a prisoner "faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"  *Id.* (quoting *Hunt*, 199 F.3d at 1224).

Defendants Smith, Vasquez, and Solomon's contention that Plaintiff's alleged harm is not sufficiently serious ignores *Helling v. McKinney*, 509 U.S. 25, 35 (1993), even though the Magistrate Judge assessed Plaintiff's alleged harm under its framework.  Defendants focus on Plaintiff's current health problems—e.g., coughing, fatigue, shortness of breath, bloody mucus, nosebleeds, and irritation of his eyes, nose, and throat—and correctly argue that they are not serious health conditions.  *See* Doc. 83 at 5–6.  In *Helling*, though, the Supreme Court held that a substantial risk of serious *future* harm to a prisoner's health satisfies the objective element of an Eighth Amendment claim if the risk arises from the prisoner's unwilling exposure to a carcinogenic substance and the risk is so grave that it violates contemporary standards of decency to expose anyone unwilling to it.  *Helling*, 509 U.S. at 36.  Here, the alleged future harm to Plaintiff's health is serious lung conditions like cancer that arise from the inhalation of crystalline silica.  *See* Doc. 22 at ¶¶ 33, 73.  Based on the allegations that Plaintiff was allegedly exposed to, and inhaled, clouds of crystalline silica for approximately nineteen months, *see id.* at ¶¶ 23, 28–29, 41, 43, 64, it is plausible that the risk of Plaintiff developing these conditions from this carcinogen was so substantial that it violated contemporary standards of decency to expose him to it.

As for Defendants Smith, Vasquez, and Solomon's objections to the Magistrate Judge finding it plausible that they acted with deliberate indifference to this risk, their contention that the issuance of some protective equipment to Plaintiff precludes a finding of deliberate indifference, *see* Doc. 83 at 6, has two flaws.  First, this contention reads "reasonableness" out of the deliberate indifference standard.  Not every measure taken to abate a prisoner's exposure to

substantial risk of serious harm precludes a finding of deliberate indifference. Only reasonable ones do so (even if they ultimately do not avert the harm). *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Plaintiff's exposure is distinct from the situation in which prison officials attempt to mitigate prisoners' one-time exposure to a dangerous substance by providing them with protective equipment. Here, while Plaintiff received work gloves, wrap around safety glasses, and masks made for light painting projects to protect him from crystalline silica, he allegedly informed Defendants Smith and Solomon that this protective equipment was ineffective and that he was still inhaling the carcinogen. Doc. 22 at ¶¶ 19, 32. These Defendants allegedly ignored this information until Plaintiff filed a grievance about the inadequate protective equipment and at which point Defendant Solomon gave the multiple-member cleaning crew one pair of goggles and one respirator to share. *Id.* at ¶¶ 38–40. It is plausible that taking no action (in the case of Defendant Smith) and providing one set of protective equipment for Plaintiff to share with rest of the cleaning crew (in the case of Defendant Solomon) are not reasonable responses to learning that the initial protective equipment that Plaintiff received was not protecting him from crystalline silica and its associated risk to his health.

The second flaw in Defendants Smith, Solomon, and Vasquez's argument is that neither Defendant Vasquez nor Defendant Smith is alleged to have provided Plaintiff with any protective equipment at all. *Cf.* Doc. 22 at ¶ 19 (alleging that members of the cleaning crew "were issued" protective equipment); *id.* at ¶ 40 (alleging that Defendant Solomon gave the crew one pair of goggles and one respirator). Therefore, Plaintiff's receipt of protective equipment cannot establish that Defendants Vasquez and Smith themselves responded reasonably to the risk that clouds of crystalline silica dust posed to Plaintiff's future health.

In their reply brief, Defendants Smith, Solomon, and Vasquez cite two cases for the proposition that "[a] claim arising from alleged inadequacies in safety equipment provided by prison officials is not cognizable under § 1983."  Doc. 87 at 3 (citing *Atencio v. S. N.M. Corr. Facility*, No. 13-cv-1078 KG/MV, 2015 WL 13662367, at *3 (D.N.M. May 29, 2015) (unpublished), and *Sutton v. Kansas Dep't of Corr.*, 2015 WL 592069, at *8 (D. Kan. Sept. 28, 2015) (unpublished)).  They overstate these persuasive authorities' holdings.  In both cases, this Court and the U.S. District Court for the District of Kansas found that a prisoner's allegations that prison officials' failure to provide appropriate safety equipment sounded in negligence, rather than deliberate indifference, because they did not plausibly establish that the officials were aware of any substantial risk of serious harm.  *See Sutton*, 2015 WL 592069, at *8; *Atencio*, 2015 WL 13662367, at *3.  Here, by contrast, Plaintiff's Amended Complaint establishes the plausibility that Defendants Solomon, Smith, and Vasquez knew that Plaintiff's inhalation of crystalline silica posed a substantial risk of serious harm to his future health.  *See* Doc. 22 at ¶¶ 24, 31-32, 44 (alleging that Defendants Solomon, Smith, and Vasquez learned about the health risks associated with crystalline silica exposure from another LCCF prisoner, that Defendant Smith knew that the removal of paint was creating clouds of crystalline silica dust and that protective equipment was not preventing Plaintiff from inhaling this dust, and that Defendants Solomon and Vasquez observed Plaintiff covered in crystalline silica dust while removing paint).  Like the Court's conclusion on the voluntariness issue, its conclusion here as to deliberate indifference does not reach beyond the four corners of Plaintiff's Amended Complaint.  Defendants Smith, Solomon, and Vasquez remain free to argue in a motion for summary judgment based on evidence adduced in a *Martinez* report that they were unaware of any substantial risk of serious harm to Plaintiff's future health.

C.   *Plaintiff's Negligence Claims against Defendants Smith, Vasquez, and Solomon*

Defendants Smith, Vasquez, and Solomon's final objection is to the Magistrate Judge's finding that, upon further review under § 1915A, the Amended Complaint states negligence claims against them.  They dispute that Plaintiff's allegations are sufficient to establish the plausibility that his exposure to crystalline silica caused him a cognizable injury.  Doc. 83 at 7.

In New Mexico, "a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 73 P.3d 181, 185–86 (N.M. 2003).  Breach, damages, and causation are questions of fact to be determined by the factfinder unless their relevant facts "are undisputed and all reasonable inferences therefrom are plain, consistent, and uncontradictory." *Lerma ex rel. Lerma v. State Highway Dep't*, 877 P.2d 1085, 1087–88 (N.M. 1994); *see also Payne v. Hall*, 137 P.3d 599, 605 (N.M. 2006); *Schear v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 687 P.2d 728, 729 (N.M. 1984).

Defendants' contention that Plaintiff did not suffer actual injury because his alleged bodily injuries are *de minimis*, *see* Doc. 83 at 7, lacks support in New Mexico caselaw.  New Mexico law requires "actual harm or damage" for liability to arise from negligence. *Sanchez v. Clayton*, 877 P.2d 567, 573 (N.M. 1994).  But whether this harm must be more than *de minimis* is an open question.  The Court believes that the New Mexico Supreme Court would answer this question in the negative. *See Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (requiring the Court to answer open questions of state law by endeavoring to predict how the state's high court would rule).[3]

---

[3] Defendants Smith, Solomon, and Vasquez fail to cite to a single case from any court (let alone a New Mexico court or a court applying New Mexico law) to support their argument that Plaintiff's harm must be more than *de minimis*

As this Court has observed, *see Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1087, n.50 (D.N.M. 2019), the New Mexico Supreme Court has "been very willing to adopt the view of the Restatement of Torts to assist [its] development of new tort areas." *Schmitz v. Smentowski*, 785 P.2d 726, 736 (N.M. 1990); *see also Rodriguez v. Del Sol Shopping Ctr. Assocs.*, 326 P.3d 465, 468 (N.M. 2014) (reaffirming the adoption of Restatement (Second) of Torts § 7 and cmt. j for when a defendant has a duty to protect a plaintiff from third parties); *Carmona v. Hagerman Irrigation Co.*, 957 P.2d 44, 48–49 (N.M. 1998) (adopting Restatement (Second) of Torts § 339 for the tort of attractive nuisance); *First Interstate Bank of Gallup v. Foutz*, 764 P.2d 1307, 1309 (N.M. 1988) (adopting Restatement (Second) of Torts § 552 for the tort of negligent misrepresentation); *Trujillo v. Puro*, 683 P.2d 963, 969 (N.M. 1984) (adopting Restatement (Second) of Torts § 46 for the extreme and outrageous element of the tort of intentional infliction of emotional distress).

Restatements (Second) and (Third) of Torts reject the proposition that a plaintiff must suffer more than *de minimis* harm to have cause of action for negligence. *See* Restatement (Third) of Torts: Physical & Emotional Harm § 4 cmt. c (Am. La. Inst. 2010); *id.* § 6; Restatement (Second) of Torts §§ 15, 281 (Am. Law. Inst. 1965). Under these restatements, "any level of physical impairment is sufficient for liability; no minimum amount of physical harm is required. Thus, any detrimental change in the physical condition of a person's body … counts as a harmful impairment; there is no requirement that the detriment be major." Restatement (Third) of Torts: Physical & Emotional Harm § 4 cmt. c; *see also* Restatement

---

to state a claim for negligence. Doc. 83 at 7. *Andrews v. U.S. Steel Corp.*, 250 P.3d 887, 890 (N.M. Ct. App. 2011)—the only case cited by Defendants in their discussion of Plaintiff's negligence claims—addresses general and specific causation of injury in toxic tort cases, not the amount of injury required to state a toxic tort claim. Therefore, the Court finds, in the alternative, that Defendants have forfeited their objection to the Magistrate Judge's findings about Plaintiff's negligence claims against them. *See Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992).

(Second) of Torts § 15 cmt. a.  Since Plaintiff's alleged injuries—fatigue, shortness of breath, heart palpitations, nosebleeds, and blood in his mucus membranes, *see* Doc. 22 at ¶¶ 46, 49, 71—are detrimental changes in the condition of his body (even if some of them may be temporary), his Amended Complaint establishes the plausibility that he sustained actual injury from his exposure to crystalline silica.[4]

### D.  *Plaintiff's General Objections*

The Court does not detail its rebuttal of Plaintiff's objections to the Magistrate Judge's recommendations since his objections are nonspecific.  Specific objections "focus the district court's attention on the factual and legal issues that are truly in dispute." *2121 E. 30th St.*, 73 F.3d at 1060.  Plaintiff objects generally to the Magistrate Judge's recommendations that the Court dismiss with prejudice all his claims against Defendant Franco, vacate in part its earlier order finding that all the claims in his Amended Complaint survive § 1915A screening, and dismiss with prejudice all his claims against Defendants Lewis-Ortega, Valeriano, and the GEO Group.  *See* Doc. 82.  However, he fails to direct the Court to any specific factual or legal errors by the Magistrate Judge.

## II.  Clearly Erroneous Review of Order Denying Appointment of Counsel and Remaining Recommendations in the Magistrate Judges' PFRDs

Upon review for clear error or mistake in law, the Court concurs with the Magistrate Judge's recommendations that (i) the Court construe Mr. Garcia's and Mr. Helmstetler's Motions for Joinder as motions to intervene and deny them; (ii) deny as moot Plaintiff's Motion for Leave

---

[4] Like the Magistrate Judge, *see* Doc.77 at 43 n.9, the Court does not reach the questions of whether Plaintiff's increased risk of contracting cancer, emotional distress caused by the feared increased risk, or the embedment of crystalline silica particles in his lungs constitute an injury sufficient to state a claim for negligence under New Mexico tort law.

to File Surreply and the GEO Defendants' Motion to Strike; and (iii) deny Plaintiff's Motion for Sanctions and Motion in Support of Mr. Helmstetler's Joinder.  Since no party filed objections to any of these recommendations, the Court declines to detail the reasons for its concurrence.  *Cf. Garcia*, 232 F.3d at 766–67 (holding that *de novo* review does not require the Court to explain its adoption of the magistrate judge's PFRD).

The Court also affirms the Magistrate Judge's order denying Plaintiff's Motion to Appoint Counsel.  *See* Doc. 62.  In that order, the Magistrate Judge properly applied the framework of *Thomas v. Brockbank*, 195 F. App'x 804 (10th Cir. 2006) (unpublished) to determine that appointment of counsel was not warranted at the time.  Under this framework, the factors that guide the decision to appoint counsel in a civil case are "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."  *Thomas*, 195 F. App'x at 807 (quoting *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)).  The Magistrate Judge did not err in finding that Plaintiff has demonstrated the ability to conduct legal research and present timely and cogent documents to the Court, *see* Doc. 62 at 2, since there is ample evidence of this in Plaintiff's many filings.  Nor did the Magistrate Judge err in finding that Plaintiff's claims are not unusually complex as none of Plaintiff's dismissed or remaining claims present any difficult, novel questions of law.

Plaintiff objects to the Magistrate Judge's order based on the asymmetry inherent in him proceeding *pro se* and Defendants being represented by two law firms, his lack of access to legal assistance and up-to-date legal research materials, and the logistical difficulties he will face in obtaining discovery from Defendants and other prisoners without legal representation.  Doc. 72. None of these reasons show that the Magistrate Judge's decision to not appoint counsel for

Plaintiff was erroneous.  The first reason is present in almost every *pro se* case and so cannot require a determination that the Court should ask the small regional *pro bono* bar to take a case. The second reason has yet to affect Plaintiff's ability to perform the legal research necessary to defend his claims.  The third reason is irrelevant, as the Court has not yet authorized the parties to serve discovery on each other or third parties.  Even if discovery were proceeding, difficulties in obtaining fact and expert discovery generally do not warrant appointment of counsel.  *See Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

### III.   *Martinez* Report

Defendants Smith, Vasquez, and Solomon request that, in lieu of being ordered to file a *Martinez* Report, the Court direct Plaintiff "to produce (1) his complete medical file so that it can be determined whether he can demonstrate the existence of substantial harm … and (2) scientific documentation establishing a causal link between that harm and his claimed exposure to crystalline silica at LCCF."  Doc. 83 at 7.  In effect, Defendants wish to obtain discovery from Plaintiff on the objective element of his Eighth Amendment claim, i.e., whether his exposure to crystalline silica caused a substantial risk of serious harm to his future health.  The discovery required on that element will likely not only require the production of Plaintiff's medical file and scientific documentation about the link between crystalline silica and any identified risk to his health (as requested by Defendants) but also the designation of medical and scientific experts, the examination of Plaintiff by medical experts, and the preparation of medical and scientific reports by these experts.[5]  Given the challenges inherent in Plaintiff providing and preparing this

---

[5] Plaintiff cannot bear his burden of providing evidence that his individual and particular level of exposure to crystalline silica posed an unreasonable risk of substantial harm to his future health solely by detailing the extent of that exposure in an affidavit.  *See Durham v. Hood*, 412 F. App'x 127, 129 (10th Cir. 2011) (unpublished).

discovery from prison, the Court finds that having Defendants prepare a *Martinez* report about Plaintiff's remaining claims is a more appropriate way forward at this time.

In *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978) (unpublished), the Tenth Circuit "authorized district courts to order reports from prison officials 'to develop a basis for determining whether a prisoner plaintiff has a possibly meritorious claim.'" *Jennings v. Yates*, 792 F. App'x 606, 609 (10th Cir. 2019) (unpublished) (quoting *Hall*, 935 F.2d at 1112). The purpose of these reports "is to identify and clarify the issues plaintiff raises in his complaint [and] aid[] the court in its broad reading of the pro se litigant's pleadings … by supplementing a plaintiff's often inadequate description of the practices that he contends are unconstitutional." *Hall*, 935 F.2d at 1112. Receipt of a *Martinez* report and its additional information about the circumstances, policies, and practices surrounding Plaintiff's participation in the cleaning crew, his exposure to crystalline silica, and Defendants Smith, Solomon, and Vasquez's involvement in, and knowledge of, these matters may facilitate the resolution of Plaintiff's remaining claims without the parties' spending months exchanging discovery.

## CONCLUSION

For the reasons above, the Court OVERRULES Plaintiff's Objections (Doc. 72) to the Magistrate Judge's Order Denying Motion to Appoint Counsel and Plaintiff's and the GEO Defendants' Objections (Doc. 82; Doc. 83) to the Magistrate Judge's PFRD No. 1, ADOPTS PFRD No. 1 and PFRD No. 2 in full, and AFFIRMS the Magistrate Judge's decision to not appoint counsel for Plaintiff (Doc. 62). IT IS HEREBY ORDERED that:

1. The GEO Defendants' and Defendant Lewis-Ortega's Motions for Summary Judgment (Doc. 32; Doc. 36) are CONVERTED into motions to dismiss and DENIED;

2. Plaintiff's motions to deny or stay these summary judgment motions (Doc. 38; Doc. 46) and for leave to file surreply (Doc. 59) are DENIED as MOOT;

3. The GEO Defendants' Motion to Strike (Doc. 56) is DENIED as MOOT;

4. Defendant Franco's Motion to Dismiss (Doc. 53) is GRANTED and all of Plaintiff's claims against him are DISMISSED WITH PREJUDICE;

5. Mr. Helmstetler's and Mr. Garcia's Motions for Joinder (Doc. 34; Doc. 78) are CONVERTED into motions to intervene and DENIED; and

6. Plaintiff's Motion in Support of Mr. Helmstetler's Joinder (Doc. 47) and his Motion for Sanctions (Doc. 60) are DENIED.

IT IS ALSO ORDERED that, upon further review under 28 U.S.C. § 1915A, that the following claims are DISMISSED WITH PREJUDICE for failing to state a claim for relief:

1. All Plaintiff's claims against Defendants Lewis-Ortega, Valeriano, and the GEO Group;

2. All Plaintiff's claims against Defendants Smith, Solomon, and Vasquez in their official capacities; and

3. Plaintiff's First Amendment claims against Defendants Vasquez and Solomon.

IT IS FURTHER ORDERED that Defendants Smith, Solomon, and Vasquez file a *Martinez* Report **within thirty (30) days of entry of this Order** in accordance with the following:

1. Defendants' *Martinez* Report must address **in a written brief** Plaintiff's Eighth Amendment and negligence claims against them as well as any defenses they raised in their answer that they wish to pursue.  Defendants shall also include as attachments any affidavits or documents relevant to any allegation against them or defense to Plaintiff's

claims.  The submission of documents without an accompanying brief will not be considered in compliance with this Order.

2. Allegations and defenses must be supported by factual assertions in the brief, which, in turn, must be supported by proof, such as affidavits or documents that are to be included as attachments.

3. The brief must also state whether policies or regulations addressing the allegations exist, and, if so, relevant policies or regulations must be included ***in full*** as attachments.

4. Copies of all affidavits and documents included as attachments should be arranged in a logical order and be Bates-stamped or otherwise be clearly serially marked.  Defendants must also provide affidavits to properly authenticate submitted documents.

5. The Court is aware that materials contained in corrections files may be sensitive and that there may be valid reasons for keeping such information secret.  As such, Defendants may move to seal confidential portions of documents submitted with the Martinez Report and provide a redacted version of the Report to Plaintiff.  If Defendants seeks to seal or redact any portion of their Report, they must file a motion to seal **at least fourteen (14) days prior** to the *Martinez* Report filing and service deadline.  The motion to seal shall describe with specificity the type of documents Defendants wish to seal and shall assert the reasons for nondisclosure.

6. Should Defendants choose to file a motion for summary judgment concurrently with their *Martinez* Report, that motion shall be filed separate and apart from the Report and must comply with the applicable federal and local rules of procedure, with the following caveat: rather than file attachments to a motion for summary judgment in support of the

factual assertions therein, Defendants shall instead cite to the Martinez Report.[6]
Defendants must provide citations supporting their assertions with specificity.  At the
very least, Defendants should direct Plaintiff and the Court to the specific page or pages
supporting an assertion.

7. The Court may strike any filing that fails to comply with this order.

IT IS FINALLY ORDERED that Plaintiff shall file and serve his response to the facts
contained within Defendants' *Martinez* Report **within thirty (30) days of its filing**.  If
Defendants file a motion for summary judgment, Plaintiff must file a separate response to that
motion **within thirty (30) days**.  Defendants shall file and serve their reply, if any, to a motion
for summary judgment **within fourteen (14) days of Plaintiff's response**.  Defendant need not
file a reply to Plaintiff's Response to the Martinez Report.


_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Under the Local Rules, "exhibits to a motion, response or reply" are not to exceed a total of fifty (50) pages unless by agreement of the parties or with leave from the Court after the filing a motion.  D.N.M. LR-Civ. 10.5.  Given that the *Martinez* Report will essentially serve as the parties' exhibits to a summary judgment motion, response, and reply, should such filings be made, the Court hereby grants leave for the *Martinez* Report to exceed the exhibit page limit set forth in the Local Rules.