IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT,

    Plaintiff,

v.                                                                                          Civ. No. 18-619 JCH/GBW

RAYMOND SMITH, *et al.*,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me on Defendants' *Martinez* Report (*docs. 103, 104, 105, 112*) and Motion for Summary Judgment and Memorandum of Law in Support (*doc. 113*) pursuant to the Court's Order of Reference (*doc. 27*), referring this case to me for analysis, findings of fact, evidentiary hearings if warranted, and recommendations for its ultimate disposition. Having reviewed Defendants' Motion, the attendant briefing (*docs. 115, 118*), Defendants' Supplement to Defendants' *Martinez* Report (*doc. 119*), all available evidence, and all applicable law, I RECOMMEND that the Court GRANT summary judgment in favor of Defendants on Plaintiff's Eighth Amendment claims and DISMISS Plaintiff's remaining state law claims.

    I.    **PROCEDURAL HISTORY**

Plaintiff initiated this suit in state court on May 17, 2018, *see doc. 1-1*, and

Defendant Mindy Lewis-Ortega removed the action to federal court on June 29, 2018, *see doc. 1*. The factual underpinnings of Plaintiff's claims, as alleged in the Amended Complaint, are recounted in detail in the undersigned's August 16, 2021, Proposed Findings and Recommended Disposition and are not repeated here. *See doc. 77 at 3-8.* For present purposes, Plaintiff's claims arise from his alleged exposure to crystalline silica dust without proper ventilation, protective equipment, or training while on a work detail at the Lea County Correctional Facility (LCCF) during which Plaintiff removed paint from doors in the facility. *See generally doc. 1-1*. After Plaintiff's original complaint did not survive screening under 28 U.S.C. § 1915A, *see doc. 21 at 9*, with the Court's leave, Plaintiff filed the operative Amended Complaint on April 5, 2019. *Doc. 22.* Following the Court's Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (*doc. 89*) which adopted the undersigned's Proposed Findings and Recommended Disposition (*doc. 77*), the sole claims remaining in this case are Plaintiff's: (i) Eighth Amendment claims against Defendants Raymond Smith ("Smith"), Eddie Solomon ("Solomon"), and Dominic Vasquez ("Vasquez") for deliberate indifference to the substantial risk that exposure to crystalline silica posed to Plaintiff's health; and (ii) negligence claims against these three Defendants for ordering Plaintiff to remove crystalline silica paint from LCCF facilities without providing him adequate training or protective equipment to do so safely. *See doc. 77 at 18-26, 41-44; doc. 89* at 21.

Pursuant to the Court's Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition, Defendants Smith, Solomon, and Vasquez filed a *Martinez* Report addressing Plaintiff's surviving Eighth Amendment and negligence claims, and their defenses to the same, on May 16, 2022. *See docs. 103-105*; *doc. 112*. Plaintiff filed a response to Defendants' *Martinez* Report on July 18, 2022. *Doc. 116*. Defendants filed a supplement to their *Martinez* Report on November 9, 2022. *Doc. 119*.

Defendants filed the instant Motion for Summary Judgment and Memorandum of Law in Support on June 21, 2022, *doc. 113*, and Plaintiff filed a timely response and accompanying declaration on July 18, 2022, *docs. 116, 117*. The Motion was fully briefed on August 1, 2022, with the filing of Defendants' reply, and is ripe for decision. *See doc. 118*.

In the present motion, Defendants argue they are entitled to summary judgment on Plaintiff's Eighth Amendment and negligence claims. They contend that Plaintiff cannot establish an Eighth Amendment claim against Defendants Smith and Vasquez because these individuals were not personally involved in any constitutional violation. *See doc. 113* at 13-16. They also argue that Plaintiff cannot establish either the objective element or subjective element of his Eighth Amendment claim because he voluntarily participated in the work assignment that he claims exposed him to crystalline silica; he was not exposed to unreasonably high levels of crystalline silica dust; he cannot demonstrate he has suffered or will suffer substantial harm from his alleged exposure;

3

and none of Defendants Solomon, Smith, or Vasquez acted with the requisite state of mind. *See id.* at 16-23. Finally, Defendants argue that Plaintiff cannot prevail on his negligence claim because he fails to establish breach of duty or general and specific causation. *See id.* at 23-25. Plaintiff contests each of these arguments. *See doc. 115*.

## II.   UNDISPUTED MATERIAL FACTS

Based on the parties' briefing and the record as a whole, the Court finds the following material facts to be undisputed for purposes of Defendants' Motions for Summary Judgment:

1.   At all times relevant to this case, Plaintiff was an inmate housed at Lea County Correctional Facility ("LCCF"). *Doc. 22* at ¶ 2; *doc. 113* at 1.

2.   Beginning on August 24, 2016, Plaintiff performed work on a "detail and cleaning crew." *Doc. 22* at ¶ 12; SUF 1[1]; *doc. 104-7* at 10. In his capacity as a worker on the detail and cleaning crew, Plaintiff removed paint from doors within LCCF, repainted doors, and painted additional areas that needed to be painted or touched up. *Doc. 22* at ¶ 12, 23 (alleging that Plaintiff would "grind[] and scrap[e] paint off doors" and perform "other dirty jobs"); *doc. 104-10* through *doc. 104-11* (job description of "Detail & Cleaning Crew" and Plaintiff's timecards indicating his job title was "Detail & Cleaning Crew").

---

[1] The citation "SUF" refers to the Statement of Undisputed Facts contained in Defendants' motion. *See doc. 113* at 2–35.

4

3.      From the beginning of Plaintiff's work on the cleaning and detail crew, Plaintiff was provided tools and personal protective equipment (PPE). The tools initially provided to Plaintiff for removing paint were paint scrapers and heat guns, and the PPE initially provided to Plaintiff consisted of, at a minimum, gloves, safety glasses, and N95 masks.[2] *See* SUF 7; *doc. 22* at ¶ 19; *doc. 105-1* at 1; *doc. 117* at ¶ 5.[3]

4.      Sometime in October 2016, Plaintiff requested that a paint grinder be made available to him for his paint removal work because "the heat guns were ineffective and time consuming [and] a grinder would be faster." *Doc. 117* at ¶ 6; *see also doc. 118* at 9. At least one grinder was provided, and Plaintiff began using a grinder to remove paint from various surfaces in LCCF in October 2016. SUF 9; *doc. 22* at ¶ 23; *doc. 105-1* at 3 (listing a grinder on a tool sign-out sheet signed by Plaintiff on October 7, 2016); *doc. 117* at ¶ 10.

5.      In this case, Plaintiff alleges that the grinders produced "toxic dust clouds" composed of "paint dust contaminated with crystalline silica" that would "linger[] for hours" in spaces "with no proper ventilation." *Doc. 22* at ¶¶ 23-24. Plaintiff further alleges that Defendants Smith, Solomon, and Vasquez created the detail and cleaning

---

[2] Defendants state that the masks that were provided to Plaintiff were N95 masks, based on the declaration of Defendant Solomon. *See doc. 113* at 17 (citing *doc. 104-5* at ¶ 4). Plaintiff asserts that they were not N95 masks but rather "dust masks," based on the masks being identified as "dust masks" in the tool sign-out sheets. *See doc. 115* at ¶ 7 (citing *doc. 105-1* at 1-67). The Court finds that Plaintiff has failed to adequately controvert that the "dust masks" referenced in the tool sign-out sheets were N95 masks, and so refers to them as N95 masks. *See* Fed. R. Civ. P. 56(c)(1).
[3] Plaintiff fails to create a genuine dispute as to the availability of these tools and PPE, as he contests the adequacy but not the existence of the PPE provided to him. *See doc. 115* at ¶ 7; *doc. 117* at ¶ 11.

5

crew and "order[ed] [P]laintiff to remove paint off doors," thereby "exposing him to crystalline silica[] without training nor [sic] proper protective gear" in deliberate indifference to an unreasonable risk to Plaintiff's future health. *Doc. 22* at ¶ 73.

6.      On April 16, 2017, Plaintiff filed an inmate informal complaint based on LCCF administrators' failure to provide a respirator for Plaintiff's use while he removed paint from doors within the facility using a grinder. *See doc. 104-6* at 2. By April 21, 2017, Plaintiff was provided a respirator and goggles, and his grievance was marked as resolved. *Doc. 22* at ¶ 40; *doc. 104-6* at 2.

7.      However, on May 18, 2017, Plaintiff filed an inmate grievance against the LCCF administration for showing "callous disregard for [Plaintiff's] health/safety" by "refus[ing]" to provide Plaintiff with a respirator, goggles, or paint stripper, and by giving Plaintiff "a grinder to strip twenty (20) years of paint off doors that resulted in [Plaintiff] breathing crystalline silica." *Doc. 104-7* at 1. Plaintiff also wrote in his grievance that "now that paint stripper is provided–the toxic dust is no longer produced. But as a result of the previous practice–I now have chest congestion and a cough." *Id.*

8.      On May 19, 2017, Defendant Vasquez was contacted for information related to the May 18 grievance filed by Plaintiff. In response to the request for information, Defendant Vasquez indicated that he had "suggest[ed] [to Plaintiff] to find another job" and told him "the paint is not toxic." *Doc. 104-7* at 13; *see also doc. 104-4* at 3-4.

6

9.      On June 12, 2017, the LCCF Grievance Officer resolved Plaintiff's May 18 grievance. *Doc. 104-7* at 4. Included in the Grievance Officer's resolution was the statement that "[a] solution to your issue can be to apply for a different position. If you have these concerns that this position has caused you any health issues this facility is not making you work as a Painter. You may stop at any time this has been said to you several times before." *Id.*

10.     Use of grinders at Plaintiff's facility to remove paint by prisoners not equipped with respirators ceased in May 2017. *Doc. 104-7* at 1, 12.[4]

11.     While working on the detail and cleaning crew from October 6, 2016, through May 2017 (*i.e.*, the time period during which grinders were used without respirators also available), Plaintiff worked up to eight hours per day on Monday through Friday. Plaintiff occasionally worked overtime and received weeks off due to lockdown. *Doc. 104-10 at 5-12; doc. 104-11 at 2-8.*

---

[4] Plaintiff asserts in a signed declaration submitted with his response to Defendants' Motion for Summary Judgment that he continued to use a grinder after May 2017 to remove paint from doors. *See doc. 117* at ¶ 26. This is somewhat contradictory to his statement, contained in his May 18, 2017, grievance, that toxic dust was no longer produced because paint stripper was provided as a means of paint removal, *see doc. 104-7* at 7, and directly contradictory to Defendant Vasquez's statement to LCCF's grievance coordinator on June 13, 2017 that he had "eliminated grinding the doors until further notice," *doc. 104-7* at 12. However, the Court has not made a factual finding on the question of whether grinders were still used in any capacity after May 2017 because Plaintiff concedes that he would have had a respirator available for his use if he used a grinder after May 2017. *See doc. 117* at ¶¶ 19, 26.

### III.  LEGAL STANDARDS

#### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.

In applying this standard, the Court must draw all "reasonable inferences" in the light most favorable to the non-moving party.  *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998) (citation omitted).  Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. Deliberate Indifference

The Eighth Amendment protects prisoners from prison officials' deliberate indifference to inmates' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). The Supreme Court has interpreted this protection to include deliberate indifference to conditions posing an unreasonable risk of serious damage to a prisoner's future health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Court's analysis of a prison official's deliberate indifference "involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Both must be satisfied in order to state a claim for deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component is met if the deprivation of a medical need was sufficiently serious. *Id*. Where the alleged deprivation is deliberate indifference to risk of harm to a prisoner's future health, the Court undertakes "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused by exposure to [that substance]." *Helling*, 509 U.S. at 36. In the context of a health risk caused by exposure to a harmful environmental pollutant, a prisoner satisfies the objective element by showing that he was exposed to an unreasonably high level of that pollutant. *Id*. at 25; *Ciempa v. Ward*, 150 F. App'x 905, 908 (10th Cir. 2005) (finding a grant of summary judgment proper where evidence did not support a reasonable inference that the plaintiff was "exposed to unreasonably high

9

levels of [environmental tobacco smoke]"). The Court must also "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36.

Second, under the subjective component, the prisoner must show that the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). The requisite *mens rea* is equivalent to criminal recklessness, as the defendant must actually know of the substantial risk. *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The defendant's conscious disregard of the prisoner's risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

## IV.  ANALYSIS

"Prison workplaces, like other conditions of confinement, are covered by the Eighth Amendment." *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 736 (10th Cir. 2005) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993)). A prisoner may not bring an Eighth Amendment claim for an exposure to a health risk that the prisoner encountered voluntarily. *See Woodberry v. Simmons*, 118 F. App'x 362, 365 (10th Cir.

2004). Therefore, "[i]n the work assignment context, prison officials are deliberately indifferent when they knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their health, or which is unduly painful." *Blaurock v. Kansas Dep't of Corr.*, 526 F. App'x 809, 813 (10th Cir. 2013) (emphasis added) (quoting *Choate*, 7 F.3d at 1374). The undersigned finds that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims either because Plaintiff voluntarily encountered the health risk he complains of in this case, or because Plaintiff fails to establish the objective element of a conditions of confinement claim.

### A. Voluntary Exposure

The parties dispute: (1) whether Plaintiff's participation in the cleaning and detail crew was voluntary; and (2) whether the conditions of his work on the crew were voluntary. The undersigned is persuaded by the logic of precedent from outside this circuit which has found that a prisoner's voluntary participation in a work program does not preclude an Eighth Amendment claim for working conditions confronted during that work program. *See Bagola v. Kindt,* 131 F.3d 632, 645 n. 18 (7th Cir. 1997) (rejecting the argument that voluntary participation in a prison work program means that the work conditions encountered thereafter "cannot be considered part of [a prisoner's] nonvoluntary 'conditions of confinement'"); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) ("Regardless of how a prisoner obtains his work, once he is

employed and not in a position to direct his own labor, his supervisors are not free to visit cruel and unusual punishments upon him."). Therefore, the undersigned sets aside the question of whether Plaintiff's participation in the detail and cleaning crew was voluntary and instead focuses on whether Plaintiff was compelled by prison officials to confront the work conditions he alleges constituted a risk to his health. The undisputed facts show that he was not.

Plaintiff's claims are based on his exposure to paint dust generated by the grinders used to remove paint when Plaintiff worked on the cleaning and detail crew. UMF 5. It is undisputed that Plaintiff had paint removal tools other than grinders available to him at all times during his work on the detail and paint crew. UMF 3. From the beginning of Plaintiff's work on the project, Plaintiff had use of a paint scraper and heat gun, and Plaintiff does not allege that these methods generated clouds of paint dust. *Id*. Plaintiff did not begin using a grinder to remove paint until October 2016, when he specifically asked for use of a grinder because it would be a quicker and more effective method of paint removal. UMF 4. Plaintiff does not dispute that he could have used a paint scraper and/or heat gun at any time instead of a grinder to remove paint; his assertion that grinders were "the most effective and used regularly," fails to create a dispute about whether Plaintiff ever lacked an alternative to using a grinder. *See* SUF 7-9; *doc. 115* at ¶¶ 7-9.

Moreover, even if Plaintiff did lack an alternative to a grinder in certain

situations, Plaintiff does not dispute that when he raised his health concerns related to the paint dust associated with grinders to Defendant Vasquez, Defendant Vasquez informed him he could seek a different job. *See* UMF 8. Rather than seek a different job, Plaintiff continued to work on the cleaning and detail crew, and he filed a formal grievance related to the paint dust generated by grinders. UMF 9. In response to that grievance, LCCF's grievance coordinator again informed Plaintiff that "[a] solution to your issue can be to apply for a different position. If you have . . . concerns that this position has caused you any health issues[,] this facility is not making you work as a Painter. You may stop at any time . . . ." *Id.* Meanwhile, in May 2017, paint stripper was provided as an alternative method of paint removal. UMF 7.[5]

The undersigned finds that the foregoing facts establish that it cannot be genuinely disputed that Plaintiff was not "compel[led]," *see Blaurock*, 526 F. App'x at 813, to work in the conditions forming the basis for his remaining claims (*i.e.*, the clouds of paint dust produced by grinders), *see Wooten v. Goord*, 123 F. App'x 441, 443 (2d Cir. 2005) (stating that "there is no basis for finding 'cruel and unusual punishment' . . . where the plaintiffs who challenge their work conditions are fully aware of the potential health risks stemming from their work conditions, and choose of their own free will to continue working under those conditions"). As no Eighth Amendment claim lies for

---

[5] Plaintiff's statement that "solvents/stripper were rarely used due to cost and ineffectiveness," *see doc. 115* at ¶ 8, fails to create a dispute about whether solvents and strippers were provided.

13

health risks encountered by a prisoner voluntarily, *see Woodberry*, 118 F. App'x at 365, the undersigned finds that Defendants are entitled to summary judgment on this basis.

### B. Seriousness of Potential Harm

Even if Plaintiff was exposed to crystalline silica dust unwillingly, Plaintiff fails to make the requisite showing of the seriousness of the potential harm to his future health caused by his alleged exposure. As stated previously, to satisfy the objective element of an Eighth Amendment claim based on exposure to a toxic substance, a plaintiff must present evidence sufficient to show that he was "exposed to unreasonably high levels of [the substance]," the potential future harm is serious and likely to happen based on a scientific and statistical inquiry, and the risk of future harm "is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36. To make this showing, a plaintiff must adduce evidence of his individual exposure level—as determined by the particular circumstances of his exposure—rather than rely on "anecdotal accounts of his exposure and the symptoms he claim[s] to have suffered as a result." *See Durham v. Hood*, 412 F. App'x 127, 129-30 (10th Cir. 2011) (affirming a district court's denial of an Eighth Amendment claim for exposure to environmental tobacco smoke (ETS) where the plaintiff cited reports supporting that ETS is a cause of lung disease but did not "objective[ly] indicat[e] what his level of exposure truly was"); *Ciempa*, 150 F. App'x at 908 (evidence of non-enforcement of a prison no-smoking policy failed to create material dispute in the plaintiff's favor on the objective element because it did not show

14

that the plaintiff was exposed to unreasonably high levels of ETS).

Here, Plaintiff offers sparse and insufficient evidence in support of his generalized allegations concerning the amount of dust that he encountered on his work shifts and his bare allegation that he "was . . . exposed to high levels of crystalline silica . . . which exceeded the OSHA PEL, Permissible Exposure Limit during an 8-hour work shift." *See doc. 22* at ¶ 43. Plaintiff alleges that he worked in "clouds of crystalline silica dust," that the dust produced by the grinders would "cover all surfaces in the units," and that Plaintiff himself "would be covered from head to feet with crystalline silica dust," *doc. 22* at ¶ 27-29, but he has not come forward with any scientific studies or expert reports documenting the existence of crystalline silica dust in LCCF, *cf. Davila-Bajana v. Holohan*, Civil Action No. 04-253 Erie., 2010 WL 2757104, at *10 (W.D. Pa. June 17, 2010) (evaluating results of an OSHA inspection and air sampling data, and results of a separate air quality survey, to determine whether the plaintiff adduced sufficient evidence to meet the objective requirement of an Eighth Amendment claim), report and recommendation adopted, 2010 WL 2757099 (W.D. Pa. July 12, 2010). Although the record contains evidence documenting the OSHA Permissible Exposure Limit for two compounds in the paint removed by Plaintiff at LCCF, *see doc. 105-2* at 8-9, there is no evidence of the actual concentration of these compounds in the dust clouds allegedly produced by Plaintiff's paint grinding activities. Indeed, the sole evidence in the record that corroborates Plaintiff's allegations and statements in his declaration that dust was

15

produced in the first place is the declaration of Jason Helmstetler, who did not work on Plaintiff's cleaning crew but states that he similarly breathed in dust containing "toxic and dangerous substances" during his "job as a pod porter in which [he] was ordered to clean up this substance." *See doc. 55* at 5. Like Plaintiff's allegations, Mr. Helmstetler's declaration offers no more than an "anecdotal account" of exposure to clouds of dust and is therefore insufficient to establish the objective element of a conditions of confinement claim. *See Durham*, 412 F. App'x at 129. Because Plaintiff lacks any technical reports or other objective evidence documenting the concentration of crystalline silica that was airborne in LCCF while he worked on the cleaning and detail crew, Plaintiff cannot show that he was exposed to unreasonably high levels of crystalline silica dust for purposes of the objective element of his Eighth Amendment claim. *See Ward v. Lamanna*, Civil Action No. 04-11 Erie., 2007 WL 791130, at *7, 9 (W.D. Pa. Mar. 14, 2007) (finding that the plaintiff failed to establish the objective element of a conditions of confinement claim based on exposure to crystalline silica because he "provided no evidence, scientific studies, or expert reports" that supported his claim), *aff'd*, 334 F. App'x 487 (3d Cir. 2009).

Plaintiff's failure to document the intensity of his exposure is compounded by his failure to come forth with sufficient evidence of the duration of his exposure. In cases challenging conditions of confinement, "the length of exposure to the conditions is often of prime importance." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). This is

because "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . .' may meet the standard despite a shorter duration." *Id.* (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000)).

Here, use of paint grinders by the detail and cleaning crew without concurrent use of respirators commenced in October, 2016, and ended by May 18, 2017. *See* UMFs 4, 10. As Plaintiff concedes that no additional "toxic dust" was produced after May 18, 2017, UMF 7, the span of time in which Plaintiff could have encountered crystalline silica under the conditions at issue in his Amended Complaint is approximately seven to eight months. Plaintiff's timesheets indicate that he generally worked eight hours per day on Monday through Friday on the detail and cleaning crew, with his work broken into two four hour shifts. *See* UMF 11. Because it is undisputed that Plaintiff's work included a variety of tasks—of which grinding paint was only one, *see* UMF 2— the foregoing information is insufficient to objectively establish the duration of Plaintiff's exposure. The Court has no basis for determining what proportion of Plaintiff's work on the cleaning and detail crew involved exposure to clouds of dust, so the Court is unable to determine the actual duration of Plaintiff's alleged exposure to the conditions challenged in his Amended Complaint.

Finally, there is no statistical or scientific evidence from which a finder of fact could conclude that the PPE or training given to Plaintiff was insufficient, let alone so

17

severely deficient that Plaintiff's exposure rose to the level of severity that gives rise to a constitutional violation. It is undisputed that Plaintiff was given PPE, including gloves, a N95 mask, and eyeglasses, beginning in August 2016, and a respirator and goggles, beginning in late April 2017. *See* UMFs 3, 6. Although Plaintiff asserts that he was not provided "respirators, protective disposable clothing nor training as outlined in the [Safety Data Sheets (SDS)]," doc. 115 at ¶ 10, the SDS notably do not prescribe that these types of PPE be worn in all instances and instead contemplate that the appropriate type of body and respiratory protection for individuals handling these chemicals is context-specific, *see doc. 105-2* at 9. And, even if the PPE and/or training made available to Plaintiff fell below safety standards, the objective element of an Eighth Amendment claim presents a high bar that requires more than a showing of noncompliance with best practices. *Cf. Templeton v. Anderson*, Civil Action No. 12-cv-01276-RBJ-BNB, 2014 WL 3638849, at *3 (D. Colo. July 23, 2014), (stating that even if "no level of asbestos exposure is safe," a small exposure to asbestos does not amount to "an unreasonable risk of serious damage for purposes of an Eighth Amendment claim"), *aff'd*, 607 F. App'x 784 (10th Cir. 2015).

In summary, Plaintiff has not produced evidence sufficient to permit the Court to undertake a "scientific and statistical inquiry" into the severity of the health risk he allegedly encountered while working on the LCCF detail and cleaning crew. *Helling*, 509 U.S. at 36. Accordingly, the Court cannot determine that Plaintiff's working

conditions violate contemporary standards of decency. *See Durham*, 412 F. App'x at 130. The undersigned therefore recommends that the Court find that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims due to Plaintiff's failure to produce sufficient evidence on the objective prong of the Eighth Amendment.

### C. Negligence

If the Court grants Defendants' Motion for Summary Judgment, the sole remaining claims in this case are Plaintiff's negligence claims against Defendants Smith, Solomon, and Vasquez. The Court may refuse to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This case was removed on the basis that the Court had federal question jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the related state claims pursuant to 28 U.S.C. § 1367(a). *Doc. 1* at ¶¶ 8-9. Where the Court's basis for original jurisdiction has been eliminated, "'the most common response . . . has been to dismiss the state law claim or claims without prejudice . . . .'" *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1237 (10th Cir. 1997) (internal brackets omitted) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). The undersigned recommends that, consistent with the usual practice, the Court decline to exercise supplemental jurisdiction over Plaintiff's state claims for negligence and dismiss them without prejudice.

## V. CONCLUSION

For the reasons above, I RECOMMEND that the Court: (i) GRANT Defendants' Motion for Summary Judgment (*doc. 113*) IN PART as to Plaintiff's Eighth Amendment claims, and (ii) DISMISS Plaintiff's state negligence claims WITHOUT PREJUDICE.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**